## CAMPAU *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—CONTRACT FOR SEWER—CONSTRUCTION.

Plaintiff contracted with the defendant city to build a sewer between certain designated points, according to plans on file, for a specified price "per lineal foot." From the plans it appeared that a portion of the sewer was to consist of a single cylinder, 9 feet in diameter, and the remainder, of two parallel cylinders, each 6 feet, 8 inches, in diameter, with concrete be-

tween. The word "sewer," however, was used throughout to indicate the structure in all its parts. *Held*, that each cylinder should not be treated as a separate sewer in determining the amount to which plaintiff was entitled, but that payment should be limited to the number of lineal feet of the entire structure.

2. SAME—ALTERATION OF CONTRACT—AUTHORITY OF BOARD OF PUBLIC WORKS.

A city charter provided that no contract should be made for any public work unless approved by the council, and that all contracts should be let to the lowest responsible bidder. The board of public works, when the construction of a sewer should have been ordered, was required to advertise for proposals to execute the work according to plans and specifications, and was authorized to contract with the lowest bidder, and to supervise the work of construction. *Held*, that the board had no authority, without the approval of the council, to make any substantial change in the terms of an existing sewer contract, and that, therefore, the contractor could not recover extra compensation from the city because of a variation from the plan of the work, made by direction of the board.

3. SAME.

A contract for the construction of a sewer provided that the work should be prosecuted in such order and at such places as the board of public works might direct; that the excavations should be made of such widths and in such direction as might be necessary; that any work which might be required to be done, but which was not specified in the contract, should be performed in accordance with the directions of the board, and should be paid for at its valuation; and that the contractor should perform the contract as specified, but should make any alterations in the form, dimensions, or materials that might be directed in writing by the board. *Held*, that no authority was conferred upon the board to make any material change in the plans as to the course or location of the sewer.

Error to Wayne; Frazer, J.   Submitted June 19, 1895. Decided September 26, 1895.

*Assumpsit* by Theodore L. Campau against the city of Detroit to recover a balance claimed to be due for constructing a sewer. From a judgment for plaintiff for

part of his claim, both parties bring error. Reversed, and judgment entered for defendant.

*Brooke & Spalding,* for plaintiff.

*John J. Speed,* for defendant.

MONTGOMERY, J. This action was brought to recover for a balance claimed to be due for constructing a sewer in Woodward avenue in the city of Detroit. There was a written contract between the parties, executed on behalf of the city by the board of public works. On the trial the two questions presented were—*First,* whether, under the contract, the plaintiff was entitled to recover the price per foot stipulated, as determined by measuring each cylinder as a separate sewer, or whether he was limited to the number of lineal feet of the entire substructure; and, *second,* whether the plaintiff was entitled to recover extra compensation for the reason that the construction of the sewer was made more expensive by a variation from the line marked on the plan. The circuit judge held in favor of the plaintiff on the first proposition, but held that he was not entitled to recover for extra work. Both parties appeal.

1. The first question is to be determined by a construction of the contract. The agreement on the part of the plaintiff, as expressed in the contract, was "to build and finish complete, together with the back filling, according to the plans on file in the board of public works office and the specifications hereto attached, Woodward avenue dock, outlet, and sewer, from river to north line of State street. * * * The said construction shall, in all respects, be in accordance with the plan of said sewer on file in the office of said board." The city undertook to pay "for furnishing all the labor and material, except water-lime, and building and finishing complete, together with the back filling, according to the plans; * * * Woodward avenue dock, outlet, and sewer, from river to north line of State street, the sum of

$14.49 per lineal foot." The plan shows transverse sections, which are labeled, "Transverse Sections through *Sewer*." This transverse section shows two cylinders, each 6′ 8″ in diameter, with concrete work between them. A portion of the sewer is a single cylinder, nine feet in diameter. At the foot of the plans is noted:

Sewer $\begin{cases}$ Length of sewer and dock, 2,568 feet.
Size   "    "        2–6′ 8″ cyls., 2 R. C. **B.**
"    "    "        9′ 0″ cyl., 3 R. C. B. $\end{cases}$

The letters "R. C. B." mean "rings of common brick." The distance named is the single length of the *line* of sewer. We are all of the opinion that this contract should be construed as providing for the payment of $14.49 per lineal foot, and that it is not open to the construction that each cylinder was to be treated as a distinct sewer. The word "sewer" is used throughout to indicate the structure in all its parts, consisting of a single cylinder where but one is used, and including both cylinders where two are used, and, in either case, the masonwork, cement, etc., shown in the transverse section on the plan.

2. The plan upon which the bid was based indicated the course of the sewer, and, while the distance from the curb is not marked in figures, it is claimed that the line which plaintiff attempted to build was in accordance with the plan. After he commenced work, the superintendent directed him to construct the sewer nearer the center of the street. The plaintiff protested, but did as directed, and subsequently served notice on the board of public works, stating that he would hold the city liable for the increased cost and damage resulting from the change. There was evidence that by reason of the change he came in contact with an old sewer for a portion of the distance, and additional expense was incurred by reason of this, amounting to about $4,000.

By the city charter, no contract can be made for any public work unless it (the contract) shall have been ap-

proved by the common council; and all contracts for the construction of sewers and other public works, where the expense of construction exceeds $200, must be entered into with the lowest responsible bidder. By the act creating the board of public works,[1] the work of construction of sewers must be done after advertisement for proposals to execute the work according to plans and specifications, and the board is required to contract with the lowest responsible bidder. Charter and Laws of Detroit 1893, § 326. The board of public works is given authority to supervise the work of constructing sewers. Id. § 316. But no power is conferred upon the board to vary the contract, or to change plans and specifications. It is apparent from these provisions of law that the legislature has sought to guard against the making of contracts except by awarding them to the lowest bidder, and, by providing that the contracts shall be let in accordance with the plans and specifications, has erected a safeguard against such substantial departures as that in the present case. Similar provisions of municipal charters have been considered by the court in a number of cases. In *City of Detroit* v. *Michigan Paving Co.*, 36 Mich. 335, it was held that the city could not be held for the expense of a public improvement, except under express contract conforming to charter conditions, and was not liable upon an implied contract. In *McBrian* v. *City of Grand Rapids*, 56 Mich. 108, it was said:

"The law holds those dealing with a municipal corporation to a knowledge of the extent of the authority conferred, and of the mode of its exercise, and of all illegalities committed by its agents in not pursuing the authority in the manner pointed out."

In this case the plaintiff had but one contract with the city, and that was the one awarded to him after competitive bidding. If the demand of the superintendent was not justified by the contract, he had the right to

---

[1] Act No. 392, Laws of 1873.

refuse to proceed, but had not the right to demand compensation other than that provided by the contract. He was bound to know that neither the superintendent nor the board had authority to bind the city by any new contract with him, or by any substantial deviation from the contract which he had executed. If he proceeded, he must be held bound by the terms of the contract, and limited to the compensation provided thereby. Any other rule would open the door in every case to an evasion of the statute, for, when a substantial departure is made, if it may be lawfully made by the board and bind the city, the compensation provided by the contract is no longer controlling, and a deviation which a jury may say is substantial would entitle the contractor, in every case, to recover on the *quantum meruit.*

But it is urged that the contract in this case provides for changes and extras. Plaintiff's counsel say:

"We do not contend that the plaintiff is entitled to recover damages for not being allowed to perform his contract according to its terms, or that the city is liable upon an implied contract arising from the doing and acceptance of work not contemplated by the contract. It is our claim that, under the terms of the contract and specifications, the line of the sewer might be changed, subject to the obligation to make fair compensation for extra work caused by the change, and that the plaintiff was bound to follow the line given him, although it departed from that laid down upon the plans."

The provisions of the contract which are thought to sustain this contention will be separately considered. The first provision relied upon is: "The work embraced in this contract shall be prosecuted in such order, and at such places and parts of the work, as the said board may direct." It is clear that this provision relates to the order of the work, and the places referred to are the places provided for by the contract.

The second provision referred to is contained in the specifications, and reads: "The excavations to be made to the depths shown on profile and plans on file in the

office of the board of public works, of such widths and in such direction as may be necessary." This means "necessary to comply with the contract," nothing more.

The third provision is: "Any work connected with the construction of said sewer which may be required to be done, but which is not specified herein, shall be performed in accordance with the directions of said board, and shall be paid for at their valuation." If it be assumed that this provision is lawful, under the charter, it does not authorize a departure from the specifications. There is no pretense that the work done was not specified, but the claim is that it was made more expensive by a deviation from the course specified.

The only remaining provision is: "The said contractor hereby agrees that he will perform this contract as specified, but will make any alterations in the form, dimensions, or materials which may be directed in writing by the said board of public works." This provision certainly does not authorize a change in the course or direction of the sewer.

None of these provisions, taken separately, nor all of them, read together, authorize any substantial change in the plans and specifications as to the course or location of the sewer. It is unnecessary to consider to what extent these provisions of the contract conflict with the charter provisions, as none of them sustain plaintiff's claim. Nor is it necessary to consider the effect of a provision of the contract which makes the decision of the board final as to every question relating to the execution of the contract, as to which see *Rens* v. *City of Grand Rapids*, 73 Mich. 237. For the reason stated, we think the circuit judge was right in holding that the city was not liable on this branch of the case.

For the error committed on the first branch of the case, the judgment will be reversed, with costs of both courts, and no new trial ordered.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. GRANT, J., did not sit.