Theodore W. Reuting, Kate Lapp McDonald and David Foster, Appellants, *v.* City of Titusville, J. A. C. Dubar, Thomas W. Main and M. R. Rouse.

*Municipalities—Road law—Repaving—Contribution by property owner —Taxpayers.*

If the owners of property abutting upon a street choose to contribute to the city the principal part of the cost of repaving the street, taxpayers not living upon the street have no ground to complain.

*Municipalities—Municipal contracts—" Lowest responsible bidder "—Act of May 23, 1874.*

Under the act of May 23, 1874, P. L. 233, directing municipal contracts to be awarded to the "lowest responsible bidder" the municipal authorities, acting in their discretion and in good faith, may award the contract to a higher bidder, if considerations of superior skill, promptness or efficiency on the part of such bidder lead them so to do.

*Municipalities—Agents—Authority to enter into contract.*

When a municipal corporation has power to do any particular work it may authorize its agents to make contracts for that purpose, and such contracts will be binding upon the corporation.

The councils of a municipality may by ordinance and resolution refer bids for paving to a committee on streets, and empower such committee to enter into a contract for the work of paving.

*Municipalities—Municipal indebtedness—Increase of indebtedness—Contract for paving—Current expenses—Constitutional law.*

When a contract made by a municipal corporation pertains to its ordinary expenses, such as the repaving of a street, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it legally and in good faith intends to levy therefor, such contract does not constitute an increasing of indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts.

Argued April 28, 1896.   Appeal, No. 56, Jan. T., 1896, by plaintiffs, from decree of C. P. Crawford Co., Sept. T., 1895, No. 3, dissolving preliminary injunction.   Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.   Affirmed.

Bill in equity by citizens, property owners and taxpayers of a city of the third class, to restrain the carrying out of a municipal contract for paving streets.

The material facts will appear by the opinion of the court.

The court granted a preliminary injunction.

Subsequently, on a motion to dissolve the injunction, the plaintiffs presented among others the following requests:

11. Another [bid] was received from William H. McDonald, proposing to do the work advertised for the sum of $1,478.90, provided the old bed was used, which sum was $104.64 less than the bid of the said M. R. Rouse for the same work, and for the aggregate sum of $1,623.70 provided a new bed was made for the laying of said pavement, being $79.97 less than the bid of the said Rouse for the same work.

13. The said William H. McDonald was the lowest bidder for the work advertised, and was also a responsible bidder within the meaning of the law; and he filed with the said councils sufficient bonds, as required by their proposition, with responsible sureties conditioned for the performance of his contract, and as therein demanded.

14. A written contract was proposed to be made between the city of Titusville and the owners of abutting property on Spring street at the point proposed to be paved, but this contract was never fully completed, not having been signed by all of the owners. Nor was any money ever paid into the city treasury under said contract.

17. The calculation made by W. M. Dame, used by the street committee, was erroneous, and no member of the committee is able to produce any figures which he made, or to state why he arrived at the conclusion that M. R. Rouse was the lowest bidder. At this meeting, the committee agreed among themselves to award the contract to M. R. Rouse.

20. In the calculation made by engineer Smith, at the request of the street committee, he finds that McDonald is the lowest bidder, according to the figures which he made. These figures are, however, erroneous, as against McDonald, to the extent of $75.60, being a charge for one hundred and twenty-six cubic yards of sand at 60 cts. per yard, said sand being already included in the bid of McDonald. It is also erroneous in not adding to the bid of Rouse, for laying an entirely new bed, $124.83 for extra sand which he would be obliged to use.

22. W. H. McDonald was a responsible bidder, as well as the lowest, in contemplation of the law. He is a man of good character and temperate habits, and there is no evidence that he

had ever undertaken to perpetrate any deceit, fraud or wrong upon the city of Titusville, or any one else, in any work which he had ever done for them under any contract, or that he had ever surreptitiously departed from the specifications in any contract which he had with the city, or with any one else, for doing work contracted for. There is no evidence of any attempted fraud, bribery or corruption by him in any matter, in regard to any contract or business which he had done with the city or with any one else. He has been engaged in the business of laying pavements in the city of Titusville and elsewhere for more than twenty years, and, during that time, has laid sidewalks of brick and stone, and driveways for carriages and teams, in many different parts of the city. He has had contracts with the city and has done work for same. The evidence is entirely insufficient to establish the fact that W. H. McDonald was irresponsible within the meaning of the law, or an improper person to whom to let a contract.

25. The evidence also shows that M. R. Rouse was the street commissioner in 1880, during this period (the rival bidder against McDonald in the year 1895). That Rouse also laid pavement eastward and westward of the part on Spring street for which McDonald had the contract, the work being done by the city, and from one to three years after the pavement was laid with the limestone by McDonald under his contract. The evidence also is that the present condition of the pavement—McDonald's having been there nearly fifteen years—is substantially the same, so far as injury by wear is concerned; and that, in the meantime, that part of the street covered by the McDonald contract in 1880 has been repeatedly dug up, laterally and transversely, for the purpose of laying pipes.

27. The calculation made by Hallgreen, is based upon the bids as published in the Titusville Morning Herald and the sheet of the council proceedings, containing the bids given by city clerk Dame to W. H. McDonald for his information as to the bids, when he inquired for the originals. The figures as published, and from which Hallgreen made his calculation, are the same as those in the original bids in evidence. Beardsley's calculation is also based upon the same information. These calculations correctly show the aggregate amounts of both bids.

28. The contract which the street committee made with Rouse

July 24, 1895, if valid, binds the city to pay him the sum of over $1,600 for doing certain work, the same to be paid for when completed.  The contract with owners of abutting property is not complete and does not provide for money enough to pay the amount.  The ordinance, No. 396, provides only for $350 conditionally, leaving about $1,250 to be raised in some way not mentioned or known.

32. The laying of the new pavement upon a whole block in a city of the third class is not properly a current expense of said city, and the current revenues of the city are not sufficient to meet such expense.

33. The evidence does not show that the street committee acted with sufficient deliberation, or took any means to acquaint themselves thoroughly with the facts as to McDonald's capabilities, or as to the figures showing the aggregate amounts of the two bids.

34. A calculation based upon the testimony of M. R. Rouse does not show that he is the lowest bidder, and the testimony of Joseph Smith, based upon the same ideas, also brings Rouse out as the highest bidder.

HENDERSON, P. J., filed the following opinion:

The city of Titusville, by ordinance No. 396, authorized the paving of Spring street, between Washington and Franklin streets, with paving brick; the owners of abutting property to furnish the materials necessary for said work.  The space to be paved is one block in length.  The ordinance empowered the committee on streets of the city council to advertise for bids for the required paving and to enter into a contract with the lowest responsible bidder.  The ordinance also directed the committee on streets to enter into contracts on behalf of the city with the owners of abutting property to furnish the paving brick necessary for the improvement and for furnishing and setting the necessary curbing.  The street had formerly been paved with block stone.  These had become so worn and broken that repair of the street was deemed advisable.  All of the owners of abutting property except one entered into an agreement in writing with the city for the payment into the city treasurer's hands of their proportionate shares of the cost of the paving brick and curbing.  The property owner who did not sign the

agreement to contribute to the cost owns twenty-three feet and five inches of front on that part of the street to be paved. The ordinance referred to appropriated $350 to pay the cost of the work to be done in laying the pavement. Pursuant to the notice for proposals for furnishing the materials and laying the pavement referred to, bids were presented by M. R. Rouse and W. H. McDonald. The bids were not for the whole job at a lump sum, but for different parts of the work at prices stated in the bids. At a meeting of councils held July 15, 1895, the bids were opened, read and referred to the committee on streets with power to enter into contract with the lowest responsible bidder. This committee afterwards awarded the contract to M. R. Rouse and entered into a contract with him for the work proposed. Titusville is a city of the third class. The complainants are citizens, property owners and taxpayers of said city. Three grounds of complaint are set forth in the bill. First, that if the proposed paving is an original improvement the whole thereof ought to be paid by the owners of abutting property, and that the ordinance was not passed pursuant to a petition of such owners of abutting property, as provided for by the act of May 23, 1889; that if the proposed paving be not an original improvement no part thereof should be paid by the owners of abutting property. Second, that the said M. R. Rouse was not the lowest responsible bidder for the proposed undertaking but that the said W. H. McDonald was the lowest responsible bidder, and that the committee on streets awarded said contract to said Rouse arbitrarily and through favoritism and without legal cause. Third, that the indebtedness of said city is at present in excess of two per cent of the assessed valuation of property in said city; that no vote was taken to authorize an increase of the debt, and that the contract above recited increases the debt of the city contrary to law.

[The proposed undertaking is not an original improvement, inasmuch as the street was once before paved, and the work now proposed is for the purpose of repairing the highway there rendered necessary because of the dilapidated condition of the pavement now in use.] [14] [The plan proposed does not contemplate the charging of the cost of the improvement upon the abutting property. The work is to be done at the expense of the city but the owners of the abutting property as an in-

ducement to the city to undertake the work have bound themselves by an obligation in writing to reimburse the city for the cost of the repairs in excess of $350.] [15]

The testimony offered on the hearing relates principally to the second ground of complaint. It is conceded by the complainants that the bid of McDonald is in fact $104.94 less than that of Rouse. The evidence does not make it clear that the bid of McDonald is lower than that of Rouse for the same work. The testimony of the two accountants, Hallgreen and Beardsley, was introduced to show that from their computation of the material to be furnished and the work to be done, as ascertained from the plans and bids, the bid of McDonald was $104.94 less than that of Rouse. It does not appear, however, that either of these accountants is familiar with the work contemplated, or able to determine from an inspection of the plans what amount of work will be necessary in order to complete the improvement. According to the testimony of the city civil engineer, whose experience entitles his testimony to consideration, the work according to Rouse's bid would amount to $1,579.50, and that of McDonald to $1,550. The witness explains, however, that there are doubtful points in the bid of McDonald which leave it uncertain whether his bid would be lower than that of Rouse. For instance, the bid of McDonald proposes that in case more than two inches of sand are required in laying the pavement to furnish the extra filling required, gravel and sand, at 60 cents per cubic yard; while the bid of Rouse proposes to furnish sand at 70 cents per cubic yard and gravel at 35 cents per cubic yard. The condition of the street after the old pavement is removed must determine, as shown by the testimony of the civil engineer, whether a larger proportion of gravel or sand will be necessary to bring the bed up to the necessary grade for laying the brick. [The street committee with the assistance of the city clerk made a calculation from the bids and plans and reached the conclusion that Rouse's bid was the lower, and thereupon awarded to him the contract. There is no evidence to show that the committee was influenced by prejudice or favor or by any other consideration than the public interest in awarding the contract.] [16] It was proved Rouse had a large experience in laying street pavements; that McDonald had never laid a street pavement with brick, and

none with stone except a portion of Spring street in Titusville, including the part now to be repaired. Difficulty arose between him and the city at that time on account of the character of the work done or material furnished which resulted in a suit against the city by McDonald and a judgment in his favor. Rouse had had a large experience in laying stone and brick sidewalks in the city of Titusville, and is a man of integrity and industrious habits. [The street committee took into consideration in awarding the contract the experience of Rouse and the inexperience of McDonald in the construction of street pavements.] [17]

The indebtedness of the city of Titusville is now in excess of two per cent of the assessed valuation of the property, and no vote has been taken authorizing an increase of indebtedness. There is a new balance of general revenue funds in the city treasury applicable to all current expenditures of more than $12,000. [Money from that balance is available to apply on the liability created by the contract under consideration. The estimated income for the fiscal year beginning April 1, 1895, is from $8,000 to $10,000 in excess of the ordinary expenses of the city.] [18]

Counsel for plaintiffs has presented certain requests for findings of fact, thirty-four in number. I do not understand that the equity rules as amended by the order of January 15, 1894, required findings of fact or law on a motion to continue preliminary injunction. The rule relating to findings of fact and law has reference to the proceedings at the trial of the case after issue. The mode of proceeding in injunction cases does not seem to have been changed except in regard to the manner in which evidence shall be presented. In order, however, that all the averments of fact made by the plaintiff may be passed upon, the requests for findings of fact will be considered in their order.

Requests from No. 1 to No. 5, inclusive, are affirmed. No. 6 is denied. Nos. 7, 8 and 9 are affirmed. No. 10. The bid of M. R. Rouse did not state the aggregate sum for which the work would be done, but a computation based upon his bids as shown by the plaintiff establishes the correctness of this proposition. No. 11. This request is denied. [2] No. 12 is affirmed. No. 13, in view of the decision in Inter State Vitrified Brick

and Paving Co. v. Philadelphia, 164 Pa. 477, and the cases there cited, I decline to find as asked in the first clause of this request. Bonds were filed, however, as stated. [3]   No. 14. A contract was executed between the city of Titusville and all the owners of abutting property on the street to be paved except one. No money had been paid into the city treasury on the contract at the time the preliminary injunction issued. [4] No. 15 is affirmed. No. 16. This request states the evidence substantially as given by the witnesses. No. 17 is denied except so far as relates to producing of " any figures," and the averment that the committee then agreed among themselves to award the contract to Rouse. [5]   No. 18 and No. 19 are affirmed. No. 20 is denied. [6]   No. 21 is affirmed. No. 22. In view of the legal definition of "lowest responsible bidder," this request is denied, with the exception that there is no evidence of any attempted fraud, bribery or corruption by McDonald in any manner in regard to any contract or business which he had done with the city or with any one else; and has been in the business of laying sidewalks of brick and stone, and driveways, as stated in the request. [7]   No. 23 is affirmed. Nos. 24 and 25 are refused as irrelevant. [8]   No. 26 is refused as irrelevant. No. 27 is denied so far as it affirms that a calculation of Hallgreen and Beardsley correctly shows the aggregate amount of any bids. [9]   Nos. 28 and 29 are denied. [10] No. 30 and No. 31 are affirmed. Nos. 32, 33, and 34 are denied. [11, 12, 13]

It is clear from all the evidence that the work in contemplation is the repair and repaving of a portion of a street which had previously been paved. It is not a case, therefore, of an original paving improvement, and the owners of abutting property are not liable to a compulsory charge therefor. [If, however, such owners choose to contribute to the city the principal part of the cost of making the repairs, taxpayers not living upon the street have no ground to complain that "no part thereof should be paid by the owners of abutting property."] [19]

It was held in Commonwealth ex rel. Snyder v. Mitchell, 82 Pa. 343, that the word "responsible" in the act of the 23d of May, 1874, means something more than pecuniary ability, that the duties imposed upon the officers awarding a contract are

deliberative and discretionary. In Douglass v. Com'th ex rel., 108 Pa. 559, the Court said, "The act of 23d May, 1874, directing contracts to be awarded to the 'lowest responsible bidder' has twice been before us for construction. In each it was held that the word 'responsible,' as used in the act, applies not to pecuniary ability only; but also to judgment and skill. The duties thereby imposed on the city authorities are not merely ministerial, limited to ascertaining whose bid is the lowest, and the pecuniary responsibility of the bidder and his sureties. The act calls for an exercise of duties and powers which are deliberate and discretionary." The same doctrine is reaffirmed in Inter-State Vitrified Brick and Paving Co. v. Philadelphia, 164 Pa. 477.

[If it clearly appear, therefore, that McDonald was a lower bidder than Rouse, in the absence of evidence tending to show that the authorities acted in bad faith or from corrupt motives, they might award the contract to a higher bidder if considerations of superior skill, promptness or efficiency on the part of such bidder lead them so to do.] [20]

The objection that the contract was entered into by the committee on streets and therefore invalid, is not well taken. Municipal corporations act through agents. When the corporation has power to do particular work it may authorize its agents to enter into contracts, and such contracts will be binding upon the corporation. In Hitchcock v. Galveston, 96 U. S. 341, it was held that the city of Galveston was bound by the terms of a contract made on behalf of the city by the mayor and chairman of the committee on streets and alleys who had been authorized and directed by ordinance to "enter into and make contract or contracts with proper and responsible parties to fill up, grade, curb and pave the said sidewalks;" and Mr. Justice STRONG in delivering the opinion of the Court said : "If the city council had lawful authority to construct sidewalks, involved in it is the right to direct the mayor and the chairman of the committee on streets and alleys to make a contract on behalf of the city for the work. We spend no time in vindicating this proposition:" Dunn v. Rector St. Andrew's Church, 14 Johnson, 118; Story's Agency, sec. 4; Dickerson v. Peters, 71 Pa. 53; Tiedeman on Municipal Corporations, sec. 165; Dillon on Municipal Corporations, sec. 132 and 374.

The ordinance and the resolution of July 19, 1895, referring the bids to the committee on streets empowered that committee to enter into a contract for the completion of the work. The work to be done was set forth in the ordinance and was therefore determined by the proper city authority. · The committee in executing the contract acted merely as the agent of the city.

Under the evidence in this case it cannot be said that the contract entered into by the city was the incurring of indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts. The actual liability created is very small. [It is not asserted that the contracts of the owners of abutting property for the payment of their proportionate shares of the cost of material are not available to the city.] [21]   Through these contracts the city secures a very large proportion of the cost of the improvement, the whole of which will probably not exceed $1,600. The current revenues of the city are largely in excess of the requirements of this contract. The testimony is not contradicted that there are several thousand dollars in the city treasury not needed for fixed liabilities but available for any lawful undertakings of the city. The city has undoubted authority to improve the portion of the streets to be paved and pay therefor out of the general revenues of the city, if such revenues be sufficient. In the Appeal of the City of Erie, 91 Pa. 398, the court quotes with approbation Dill. on Mun. Corp. sec. 88, to the effect that when a contract made by a municipal corporation pertains to its ordinary expenses and is together with other like expenses within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute an increasing of indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts, and adds, " This, we hesitate not to say, is a sound constitutional interpretation, and in a similar case might well be adopted in the construction of our own constitution. If the contracts and obligations of a municipal corporation do not overreach their current revenues, no legal objection can be made to them, no matter how great the indebtedness of such municipality may be ; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created."

The contract being for the repair of a portion of a street and clearly within the municipal power of creating a liability, and abundantly covered by funds in the city treasury available therefor, no reason is apparent why the contract should be held invalid upon the theory that it creates an indebtedness beyond the constitutional limit.

And now, to wit, October 15, this case came on to be heard on motion to continue preliminary injunction, and was heard upon depositions and argument of counsel; and upon due consideration thereof had [it is ordered, adjudged and decreed that the preliminary injunction heretofore granted be dissolved.] [22]

*Errors assigned* among others were (2–22) above rulings, quoting them.

*Roger Sherman*, for appellants.—The contract should have been awarded to McDonald as the lowest responsible bidder: Com. v. Mitchell, 82 Pa. 343 ; Findley v. Pittsburg, 82 Pa. 351 ; Douglass v. Commonwealth, 108 Pa. 559 ; American Pavement Co. v. Wagner, 139 Pa. 623 ; Interstate Brick Co. v. Philadelphia, 164 Pa. 477.

The paving was an original paving : City of Bradford v. Fox, 26 Pitts. Leg. Jour. 135 ; Phila. v. Bowman, 166 Pa. 393 ; City v. Baker, 140 Pa. 11 ; Philadelphia v. Dibeler, 147 Pa. 261.

The contract involved an increase of municipal indebtedness : Rainsburg v. Fyan, 127 Pa. 74 ; Appeal of the City of Erie, 91 Pa. 398.

*Geo. A. Chase*, for appellees.—The city authorities had discretion to award the contract to Rouse : Com. v. Mitchell, 82 Pa. 343 ; Findley v. Pittsburg, 82 Pa. 351 ; Douglass v. Com., 108 Pa. 559 ; American Pavement Co. v. Wagner, 139 Pa. 623 ; Interstate Vitrified Brick Paving Co. v. Phila. Mack Paving Co., 164 Pa. 477.

The employment of agents by a municipal corporation for the execution of ministerial duties is necessary and proper, and is not invalid as a delegation of discretionary authority : 15 Am. & Eng. Ency. of Law, 1044   Hitchcock v. Galveston, 96 U. S. 341.

PER CURIAM, May 13, 1896 :

The reasons for sustaining the action of the defendants in awarding the paving contract in this case to Rouse are set forth so clearly and forcibly in the opinion of the learned court below that we affirm the decree on that opinion.

Decree affirmed.