FOX *v.* CITY OF BAY CITY.

MUNICIPAL CORPORATIONS — SEWER CONTRACT — SPECIFICATIONS — EXTRAS.

A city charter provided that, whenever the common council should order a public work, the board of public works should estimate the cost, and might cause surveys, plans, and specifications to be made, and report the same to the council, with such other recommendations as they might deem advisable. A sewer contract, entered into by authority of the council, provided that in case the amount of excavation or material should vary from the specifications, plans, or estimates, which were referred to in, and made a part of, the contract, the compensation to be paid the contractor should be increased or diminished *pro rata*. *Held*, that the estimates reported by the board were meant, and not those of the city surveyor, upon whose survey and estimate the report of the board was apparently based; and that the surveyor's estimate was no part of the contract.

Error to Bay; Maxwell, J. Submitted June 9, 1899. Decided December 30, 1899.

*Assumpsit* by Henry Fox against the city of Bay City

to recover extra compensation under a sewer contract. From a judgment for plaintiff, defendant brings error. Reversed.

*Brakie J. Orr* and *James E. Duffy*, for appellant.

*Simonson, Gillett & Courtright*, for appellee.

MONTGOMERY, J.   The plaintiff recovered a judgment against the defendant city in the sum of $733.62 for extra compensation for services rendered in the construction of a sewer.   The contract between the city and the plaintiff was in writing, and the case turns mainly on the construction of this contract.   It is conceded by plaintiff's counsel that, unless the contract covered the extra work in question, there can be no recovery.   The contract provided for the construction of a 26x39-inch egg-shaped sewer, with box outlet, in the center of Fourteenth street, "according to plans and specifications therefor on file at the office of the comptroller of said Bay City, which plans and specifications are hereby referred to and made a part of this contract," at an agreed price of $5,959.32.   The specifications offered in evidence by the plaintiff, under the head of "Detail of Material and Excavation for Main Sewer," have the following:

| | |
|---|---:|
| Total length | 5,675 feet |
| Average depth of excavation | 15 feet |
| Number cubic yards of excavation | |

Under the head of "General Specifications," a subdivision reads:

"*Depth of Cutting*.   The approximate depth of cutting will be indicated upon the profile, a copy of which will be given the contractor upon application."

Under the head of "General Stipulations" are the two following, among others:

"(4) The board of public works reserve the right to alter or modify the designs, and to add to or diminish

from the contract price, and to be at liberty to make any alterations in the plan from construction, detail, or execution described by the drawings, estimates, and specifications, without invalidating or rendering void the contract; and, in case of any difference in expense, an addition to or abatement by the said contract amount, the same shall be made in ratio or proportion such work may have to the whole contract work agreed to be performed."

"(9) The work as it proceeds shall be estimated weekly by the board of public works. Only net measurement of the work will be allowed, notwithstanding any local or other usage or custom to the contrary: *Provided*, always, that 10 per cent. of each estimate will be retained by the city until full completion of the work. The final estimate will be made when the work shall have been completed, inspected, and accepted by said board of public works. In case the amount of excavation or material to be furnished shall be found to vary from the figures given in these specifications, plans, or estimates, such variation shall in no way vitiate the contract for said work, but in such case the compensation to be paid the contractor shall be increased or diminished, as the case may be, *pro rata*."

On the trial, a paper indorsed "Estimates of Surveyor 14th St. Sewer" was introduced. This paper is as follows:

"Estimated cost of furnishing material and constructing a 26x39-inch egg-shaped main brick sewer along the center line of Fourteenth street, commencing at the west line of Johnson street, and running thence west to the Saginaw river:

"Total distance, 5,675 feet. 5,475 ft. 26x39-inch brick sewer. 200 ft. 36x36-inch (inside measurement) box outlet.

"Average cut, 15 feet (approximate).

| | | |
|---|---:|---:|
| 300,000 hard-burned brick, at $6.00 | $1,800 | 00 |
| Constructing 5,475 ft. brick sewer, at 20c | 1,095 | 00 |
| Cost of cement and sand, at 20c | 1,095 | 00 |
| 60 10-inch slants, at 32c | 19 | 20 |
| 34 6-inch slants, at 17c | 5 | 78 |
| 200 feet box outlet, at $1.00 | 200 | 00 |
| 9,500 cubic yards excavation, at 20c | 1,900 | 00 |
| | $6,114 | 98 |

Manholes.

| | | |
|---|---:|---:|
| 20 set castings for manholes, at $6.00 | $120 | 00 |
| Constructing 20 manholes, at $10.00 | 200 | 00 |
| 500 cubic yards excavating, at 20c | 100 | 00 |
| Constructing lateral sewer and catch-basins with new sewer | 100 | 00 |
| | $6,634 | 98 |
| Superintending and survey | 500 | 00 |
| Total | $7,134 | 98" |

This paper was marked "Exhibit D," and will be so referred to hereafter.

Before the contract was entered into, the board of public works submitted to the common council of the city a report as follows:

"*Gentlemen:* We have caused a survey to be made, and have estimated the cost of furnishing materials for and constructing a 26x39-inch egg-shaped main brick sewer on center line of (14) Fourteenth street, commencing at west gutter line of Johnson street, and running thence west to the Saginaw river, and report as follows:

| | | |
|---|---:|---:|
| Total length of sewer | 5,675 feet. | |
| Average depth of excavation | 15 feet. | |
| Estimated cost of sewer, including all material and labor | $6,634 | 98 |
| Estimated cost of survey and superintending construction | 500 | 00 |
| Total estimated cost of sewer | $7,134 | 98" |

It appears by the testimony that the sewer was longer than described in the specifications. No question arises over this, as the city recognizes the justice of plaintiff's claim to extra compensation *pro rata.* The plaintiff also gave testimony tending to show that the excavation was greater than specified in two respects,—that the trench for the sewer was made deeper, and that in the line of the new sewer was an old sewer, which made it necessary to excavate a wider trench than would have been otherwise necessary. It was also testified by him that the work was

done under the direction of the city surveyor, and that additional compensation was promised him.

It is not contended by plaintiff's counsel that the promise of additional compensation is binding upon the city, nor could it well be so claimed, in view of our decisions. *McBrian* v. *City of Grand Rapids,* 56 Mich. 108; *Campau* v. *City of Detroit,* 106 Mich. 414. The plaintiff contends, however, that the estimate Exhibit D is a part of the contract; that the estimate of cubic yards of earth to be removed is to be taken as a part of the contract; that, under clause 9 of the specifications, plaintiff was entitled to charge for any excess in cubic yards; and that, while the city surveyor could not bind the city by a promise to pay, he could direct the work, and that if, in following the directions of the city surveyor, the estimate was exceeded, plaintiff is entitled to compensation.

In determining what estimates were referred to in clause 9 of these specifications, it is important to keep in mind the fact that the contract is authorized by the common council of the city, and that the necessity for this authority must have been known to the contractor. Section 50, Act No. 413, Local Acts 1889, provides:

"Whenever the council shall order the performance of such work, the board of public works shall proceed forthwith to estimate the cost of such work, and may cause surveys, plans, and specifications to be made, and report the same to the council, with such other recommendations as they may deem advisable."

Such a report of estimate was made to the council, but such estimate did not include any statement as to the width of excavation necessary. Assuming that the members of the common council were familiar with the provisions of the specifications, and knew of the reference to estimates in section 9, what estimates could have been intended except such as the council had official notice of? The only estimates which, under the charter, are to be submitted to the council, are estimates of the board of public works, and not estimates of the city surveyor. The board reported

to the council that Henry Fox offered to furnish the material for and construct the sewer according to the plans and specifications for a stated price.    On inspection of the plans and specifications, the council saw a reference to estimates.    The only estimates which the council was bound to or could take notice of were those reported. With this report and the report of the bid before it, the council authorized the contract.    This authorization was essential to the validity of the contract.    Act No. 413, Local Acts 1889, § 64.    We are constrained to hold that the surveyor's estimates, Exhibit D, were not part of the contract as authorized by the council.    Having reached this conclusion, the case is ruled by *McBrian* v. *City of Grand Rapids* and *Campau* v. *City of Detroit, supra*, and it becomes unnecessary to consider the other questions raised by appellant.

Judgment is reversed, and a new trial ordered.

The other Justices concurred.