## CASS COUNTY v. GIBSON.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1901.)

### No. 917.

1. ASSIGNMENTS OF ERROR—RULINGS ON EVIDENCE—COMPLIANCE WITH COURT RULES.

To compel consideration of an assignment of error as to the admission or rejection of testimony, it should quote the full substance of the evidence admitted or rejected, as required by the rules of court relating to such assignments.

2. APPEAL AND ERROR—RESERVATION OF EXCEPTIONS.

A general exception to a court's refusal to give requested instructions presents no question for review.

3. SAME—REFUSAL OF INSTRUCTIONS—COMPLIANCE WITH COURT RULES.

To compel consideration of an assignment of error as to the refusal of instructions, it should set them out totidem verbis, as the rules of court require.

4. BUILDER'S CONTRACT—TENDER OF PERFORMANCE—INSTRUCTIONS—OBJECTIONS—QUESTION FOR JURY.

An instruction that, inasmuch as a builder was prevented from going on with his contract, he was entitled to recover for what he had done, if his tender of performance by the correction of defects was made in good faith, was not incorrect because the tender may have been made on condition that sums claimed to be due should first be paid, and no reference was made thereto, as the condition was a circumstance to be considered by the jury with others in determining whether the tender was made in good faith.

5. INSTRUCTIONS—OBJECTION FOR INSUFFICIENCY—NECESSITY.

An objection to an instruction that it was not sufficiently full, cannot be sustained on appeal if the attention of the court below was not called thereto by a request for further instruction.

6. SAME—GENERAL EXCEPTIONS—INADEQUACY.

A general exception to an instruction, which does not suggest or point out the defect complained of, so as to bring it distinctly to the court's attention, and afford an opportunity to remedy an omission complained of, if any exists, presents no question for review.

**7. ERECTION OF COURT HOUSE—POWERS OF COUNTY BOARD—DELEGATION TO BUILDING COMMITTEE.**

The power vested by 1 How. Ann. St. § 483, in a Michigan county board of supervisors to erect a court house voted for by the county electors at a cost not to exceed a specified amount, involves no judgment and discretion on the part of the board in the performance of business acts relating to details of construction under the contract and the supervision of the work, and hence they may delegate supervisory power to a building committee, with authority to direct extra work and make changes in the building contemplated in the general contract.

In Error to the Circuit Court of the United States for the Western District of Michigan.

This action was brought by defendant in error against plaintiff in error to recover for the reasonable value of labor done and materials furnished in the construction of a court house for plaintiff in error, and damages for being prevented from the execution of a contract, which the plaintiff in error undertook to rescind, and the further execution of which by the defendant in error was in fact suspended by the plaintiff in error. Pursuant to legislative authority in that respect, the board of supervisors of Cass county, Mich., adopted a resolution "for the erection and completion of said court house, including the furnishings, plumbing, and heating apparatus, as hereinbefore specified, within the sum of ($40,000) forty thousand dollars." This proposition, having been submitted to the electors of that county, was carried, and the construction of a court house duly authorized by popular vote. The constitution of Michigan (article 10, § 6) provides that "a board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law." By section 9 of the same article this board is authorized to borrow $1,000 for the purpose of constructing or repairing public buildings, etc., with the further provision that "no greater sum shall be borrowed or raised by tax for such purpose in any one year, unless authorized by a majority of the electors of such county voting thereon." Among the powers defined and prescribed by statute is the power (1 How. Ann. St. § 483) "to cause to be erected the necessary buildings for poorhouses, jails, clerk's offices and other county buildings, and to prescribe the time and manner of erecting the same"; and in connection with the power is the limitation or restriction that "none of the powers mentioned in the sixth subdivision of the last preceding section shall be exercised without a vote of two-thirds of all the members elected to such board" (Id. § 484). In the execution of the power thus vested in the board of supervisors, a contract for the erection of a court house was entered into and duly executed on behalf of the county with the defendant in error. The contract price for the construction of the court house was $31,500. A separate contract was made with plaintiff in error for furnishing the court house with a heating and ventilating plant for the sum of $3,200. The contract, among other terms, provided for any changes, modifications, or additions which might be desired by the board of supervisors. The contract itself provides for supervision of the work by an architect and the board of supervisors. The board of supervisors appointed a building committee of five persons, four being members of the board of supervisors, and one a citizen of the county; the contract itself naming the committee, and reciting that such committee is to be called the "board," with the further provision that "the board of supervisors, and the said building committee, and the local superintendent can only visit the building officially." The contract clearly contemplates that its execution in detail, with any changes or additions, is to be under the immediate direction of this building committee. In the progress of the work, and at an early stage, differences and controversies arose between the parties, the particulars of which it is not necessary now to recite. The right to rescind the contract on behalf of the county on certain named grounds was expressly provided for in the agreement itself, and, when disputes arose, notice was given to the contractor, in effect, to appear at a time appointed, when the board of supervisors would consider whether or not it would terminate the contract, setting out in detail the grounds for the rescission. The contractor, in answer to

the notice, sent to the board of supervisors a written communication, in which it was declared, in effect, that he stood ready to comply with the contract on his part, and to make good any omission or to remedy any defect, provided the board of supervisors would proceed with the execution of the contract on behalf of the county. The board of supervisors subsequently adopted a resolution rescinding the contract, and stating in detail the grounds on which this action was based. The building committee then, on behalf of the county, took possession of the premises, and also took and appropriated all of the material and appliances on hand, including, of course, such parts of the structure as had been erected up to that time. The contract for the heating and ventilating plant was also rescinded. Thereupon payment was demanded, on behalf of the defendant in error, for the work done and the materials furnished and on the ground; and, payment having been refused, this suit was instituted. The account, payment of which was demanded and recovery upon which was sought, was in part for extra work done and additions made under direction of the building committee, and by agreement with that committee as to the price of such extra work; and recovery on that account was resisted upon the ground that the board of supervisors could not lawfully delegate power to a committee to make changes and variations in the written contract, and thereby create a valid debt against the county; the contention being that the board of supervisors alone could exercise such power, and that it could not be delegated to a committee or other agent.

The learned circuit judge stated the case presented by the pleadings in his charge to the jury, as follows: "The plaintiff in this case claims to recover: First. For the reasonable value of the labor and materials which he contributed to the erection of the court house for the defendant. Included in that claim is the material which had not yet been put into the building as part of the structure, but which was lying around on the grounds, and which was afterwards appropriated by the defendant. That is the first claim of the plaintiff in the case. To that claim the defendant filed a general denial of its liability to damages on account of the matters alleged in that count or claim in the declaration, and it also sets up what in legal parlance is termed a claim in recoupment, which, being interpreted, is this: that is a counterclaim in which the defendant assumes the position of plaintiff, and the plaintiff becomes defendant; it is in the nature and analogy of a set-off, where the plaintiff asserts a liability on the part of the defendant, and the defendant in turn says that the plaintiff is indebted to him, and he asks to have that taken into account, and adjudicated as a matter of set-off, and, if the set-off exceeds the amount of the plaintiff's claim, then an affirmative judgment is rendered for the defendant against the plaintiff. I adopt this analogy to explain this situation, because the course of establishing a set-off in courts of justice is probably somewhat more familiar to you than this matter of counterclaim. The defendant sets up that by reason of the faulty construction of this building, and by reason of the failure of the plaintiff to go on and complete it in accordance with the terms of the contract, the defendant has been damnified,—that is to say, it is entitled to recover damages upon that ground, which are to be offset and deducted against any claim which the plaintiff may establish, and, if it exceeds any claim which the plaintiff may establish, then it asks to have an affirmative judgment for the defendant and against the plaintiff for that amount; and the object of permitting this to be done in a single suit is that a judgment one way or the other shall establish fully the rights of both parties in regard to the whole transaction, to obviate the necessity of two or more suits, one brought by the plaintiff and another by the defendant, in order to establish the entirety of their rights in reference to the subject-matter involved. This much by way of explanation of what a counterclaim is. That sort of a claim is set up by the defendant to this claim set up in the declaration, which is predicated upon the furnishing, by the plaintiff, of labor and materials which went into the construction of this building, or were appropriated for the purpose of completing it. That is the form in which the pleadings, which state the relative claims of the parties, stand. Then, second, the plaintiff claims to recover damages for being prevented from executing the contract for heating and ventilating this building, which is an independent matter. The defendant claims, not in terms, perhaps, in the pleading which has been filed, but which it is permitted to assert

if there is ground for it under the general pleadings which it has put in, that this contract was abandoned, rescinded, and put an end to, and that, therefore, the plaintiff has no standing on which now to prosecute his claim for alleged damages on account of the breach of that contract,—the heating and ventilating contract."

During the progress of the trial in the court below counsel for the plaintiff in error requested the court, in writing, to give in charge to the jury 19 separate instructions or propositions, which request, as a whole, was refused by the court, and exception taken. In the concluding paragraph of the general charge to the jury, the circuit judge, in relation to these instructions so requested and refused, said: "Now, gentlemen, instead of following the language of these requests which have been handed up, I have thought it better to submit to the jury the views of the court upon the several branches involved, without distinct reference to the detailed requests which have been proffered. I have thought the labor of comparing the respective requests on the one side and the other and pointing out the distinctions and harmonizing them would tend to more confusion than to give the instructions in the court's own language. If, therefore, I have omitted any substantial matter, which counsel desire a request upon, I will attend to that now." The court was not requested to give any additional instructions, or to modify or change those given. The jury, under full instructions from the court in relation to every phase of the case, returned a verdict in favor of the defendant in error for the sum of $13,022.10, on which judgment was pronounced, and to revise that judgment the case comes to this court on writ of error.

M. L. Howell, for plaintiff in error.
Albert Crane, for defendant in error.

Before LURTON and DAY, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case as above, delivered the opinion of the court.

There are 37 assignments of error to the rulings and instructions of the court below, but we do not find it necessary to consider these separately or in extenso. The exceptions to testimony taken by the plaintiff in error were based upon the proposition that the building committee was without authority to bind the county for extra work, the price of which constituted part of the amount sued for. As precisely the same point is presented in exceptions to the court's instruction to the jury, the assignment on these exceptions is not material, and we pass it with the remark that it is not in accordance with the rule of this court which requires that, "when the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected." The exception to the court's refusal to instruct the jury as requested is general. Several of the propositions included in this request are clearly unsound, and under such circumstances the exception is insufficient to compel a re-examination in this court. Felton v. Newport, 34 C. C. A. 470, 92 Fed. 470; Railroad Co. v. Callaghan, 161 U. S. 91, 16 Sup. Ct. 493, 40 L. Ed. 628; Bogk v. Gassert, 149 U. S. 17, 13 Sup. Ct. 738, 37 L. Ed. 631; Newport News & M. Val. Co. v. Pace, 158 U. S. 36, 15 Sup. Ct. 743; 39 L. Ed. 887; Railroad Co. v. Volk, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78.

We further observe, in passing from this assignment, that the instructions refused are not set out totidem verbis, as the rule of this

court requires. And this observation is equally applicable to the remaining assignments of error found in the record, the purpose of which is to raise questions on different parts of the court's instructions to the jury, without setting out, in conformity to that rule, the portion of the charge excepted to. Notwithstanding the failure to conform to the rule, we proceed to examine the only two assignments of error which raise questions of sufficiently serious import to call for separate consideration and determination; the other assignments being clearly untenable, if in proper form under the rule. In one of these assignments the following instruction is complained of as erroneous:

"If you find that his tender of performance by correcting the defects was made in good faith, inasmuch as he was prevented from going on with his contract by the board, the plaintiff is entitled to recover for what he had done in pursuance of the original contract, or any modification or incident thereof, which was authorized to be made by the contract itself, including the materials appropriated by the county; and the measure of damages is the fair and reasonable value of what was thus contributed by the plaintiff in labor and materials towards the construction of the building."

The contention of the plaintiff in error is that the proposition made by the defendant in error to correct any defects, and proceed with the execution of the contract, was coupled with the condition that certain sums claimed to be due should be first paid by the county; and the exception is that the above instruction treats the proposition as an unqualified one in the omission of any reference to the condition. We are not prepared to say that the offer was upon the condition suggested. But, conceding that the tender of performance was upon such condition, this was a circumstance for the consideration of the jury, along with the other facts and circumstances of the case, in determining whether the tender of performance was made in good faith. This instruction, so far as it went, was not incorrect, in view of the particular facts of this case. There was no request for any further instruction, or for any modification of the instruction as given, and, if the charge was not regarded as sufficiently full upon the facts, the attention of the court should have been called to the point by request for further instruction; and in the absence of such request the objection cannot be sustained. Railroad Co. v. Volk, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78; Railroad Co. v. Cody, 166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1132. Furthermore, the exception on which this assignment is based is to this entire paragraph in the charge, and was general, and did not specifically suggest or point out the defect or omission now complained of, so as to bring it distinctly to the attention of the court, and afford an opportunity to remedy the omission, if any existed. Under these circumstances the exception was insufficient, and the assignment unsustainable. Society v. Faulkner, 91 U. S. 415, 23 L. Ed. 283; Railroad Co. v. Varnell, 98 U. S. 479, 25 L. Ed. 233; Railway Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527; Newport News & M. Val. Co. v. Pace, 158 U. S. 36, 15 Sup. Ct. 743, 39 L. Ed. 887; Columbus Const. Co. v. Crane Co., 40 C. C. A. 35, 98 Fed. 946; O'Neil v. Vermont, 144 U. S. 323, 12 Sup. Ct. 693, 36 L. Ed. 450.

The remaining assignment of error which we notice is based on the contention that the extra work was done, and the extra materials furnished, pursuant to an agreement made with the building committee in the progress of the work, in accordance with the terms and provisions of the general contract. As we have stated, certain items of the account upon which this suit was brought are for extra work and materials. It is insisted that the board of supervisors was without power to appoint a building committee with a right to direct extra work or make changes in the building, although this was provided for in the general contract. It is insisted that this was an attempt on the part of the board of supervisors to delegate a power which belonged exclusively to it, and that it was without authority to appoint an agent or committee charged with the duty of supervising the execution of a general contract in its business details and requirements. The instruction of the circuit court in relation to this question, given in full, was as follows:

"Now, gentlemen, some question has been made during the progress of the trial as to the powers of the building committee to make changes, and add incidents, and it has been claimed—I do not know whether it is still insisted on—that it was not competent for the board of supervisors to delegate its authority to determine the extent to which the terms of the contract should be modified or extended in respect to the specifications and details of the work, and that the building committee did not possess such powers as it professed to execute; but, gentlemen, in view of the fact that this kind of business is very generally, if not universally, conducted after a somewhat similar method, growing out of the circumstance that the whole body of supervisors is large, an unwieldy class and lot, and the difficulty of getting them together and giving supervision and direction to work of this kind, I think it may be fairly assumed that the electors of the county, when they voted to have a court house, and raise the sum of $40,000 to pay for it, had in contemplation that the board of supervisors would delegate the authority which it possessed to a building committee, and that the work would be executed in accordance with the manner in which such work is usually done, and under such supervision as the requirements of the execution of such a building contract would indicate as the progress of the work went on,—as, for example, if it turned out, after they got started on the work, that, owing to the nature of the soil under the building, it was necessary to deepen the foundations and widen them, so as to give greater resistance from the earth to the construction above it, I think it would be within the scope and power of the building committee to attend to such variations as were necessary in the interest of the county to make things solid and sound; and certainly, if the board of supervisors did not intervene seasonably, and raise some objection to the course that was being pursued, I think it would not be competent after that to deny the power of the building committee to make such changes; and I am inclined to think that the same result would occur independently of any action or acquiescence on the part of the board of supervisors. In other words, that the building committee was intrusted with the authority to make such changes as the progress of the work indicated were necessary for the sound construction of the building, within, of course, the general limits of the expenditure authorized by the county at large. I will here refer more at length to a branch of the subject which I have incidentally alluded to already, and that is to the necessity, in order to bind the county, of directing construction, or for modification or addition to the work by the building committee. I repeat that it is not strictly absolutely necessary that the direction should have preceded the beginning of the work in order to make it authorized. If, during its construction, it is concurred in, and approved, and allowed to go forward upon the assumption of its necessity or propriety, it would have the same effect as if it had been previously directed. This, gentlemen, applies to quite a number of the items detailed in this case, and, without making

a specific application of this rule to the specific instances, I will give you this general instruction, and you can apply it for yourselves."

We think the instruction thus given is sound in principle, and sustained by the weight of authority. Reuting v. City of Titusville, 175 Pa. 512, 34 Atl. 916; Kramrath v. City of Albany, 127 N. Y. 575, 28 N. E. 400; Shea v. Milford, 145 Mass. 529, 14 N. E. 764; Collins v. Holyoke, 146 Mass. 298, 15 N. E. 908; Hitchcock v. City of Galveston, 96 U. S. 341, 24 L. Ed. 659; Holland v. State, 23 Fla. 123, 1 South. 521. In 7 Am. & Eng. Enc. Law (2d Ed.) 988, the general rule and the limitation to the rule are thus stated:

"It is an elementary rule that, when authority is conferred on public officials to do acts which involve the exercise of judgment and discretion, the execution of that authority cannot be delegated to others; and this principle is applicable to boards of county supervisors or commissioners. But the usual limitation to the rule against the delegation of power obtains, and the board may delegate purely ministerial and executive duties, the discharge of which does not call for the exercise of reason or discretion."

Numerous cases are cited in support of the text which recognize or apply this established limitation to the rule. The distinction on which the cases proceed is between the original exercise of a power involving judgment and discretion and the mere performance of ministerial and business acts relating to details and in the supervision of the work. In this case the board of supervisors had determined to exercise the power and authority to construct a county court house, and for that purpose had executed a contract containing all such general provisions as could safely enter into such a contract, the cost of which was kept well within the $40,000 authorized to be expended in that regard. Such duties as were devolved upon the building committee, architect, and superintendent related to the proper execution of this general contract in its details, and to such variation in details as might become necessary in the progress of the work. There is nothing in the law of Michigan which in express terms or by fair implication denies to the board of supervisors this very necessary power to devolve on a suitable committee, architect, or superintendent ministerial duties in relation to business acts in the execution of the general contract, and a doctrine which would deny such power would render the work of a board like this burdensome, difficult, and unsatisfactory. The difficulty of the board acting in relation to every detail is quite apparent, to say nothing of the lack of necessary skill and special attention. The distinction between the exercise of original power involving judgment and discretion as to whether a public enterprise shall be undertaken and the performance of merely executive and business acts in relation to details of execution is very well brought out in the cases of Kramrath v. City of Albany, 127 N. Y. 575, 28 N. E. 400; Holland v. State, 23 Fla. 123, 1 South. 521; Hitchcock v. City of Galveston, 96 U. S. 341, 24 L. Ed. 659. See, also, Plummer v. Kennedy, 72 Mich. 295, 40 N. W. 433; and 1 Beach, Pub. Corp. § 279, and cases cited.

Certain cases decided by the supreme court of Michigan are relied on as supporting the contention of plaintiff in error. Of these cases Campau v. City of Detroit, 106 Mich. 414, 64 N. W. 336, most

strongly favors the view of plaintiff in error. In that case the plaintiff had contracted with the city of Detroit to build a sewer between designated points, and according to certain plans, for a specified price. The city charter provided that no contract should be made for a public work unless approved by the council, and that all contracts for the construction of sewers and other public works should be let to the lowest responsible bidder. When the construction of the sewer was properly ordered, the board of public works was required to advertise for proposals to execute the work according to plans and specifications required to be on file, and to supervise the work. It was held that after the execution of the contract the board of public works was without authority to make substantial changes in the terms of the existing contract without the approval of the city council, and that the contractor could not recover extra compensation from the city on account of variations from the plan of the work made by the direction of the board of public works. After reference to certain sections of the charter and laws of Detroit materially affecting the question, the court said:

"It is apparent from these provisions of law that the legislature has sought to guard against the making of contracts except by awarding them to the lowest bidder, and, by providing that the contracts shall be let in accordance with the plans and specifications, has erected a safeguard against such substantial departures as that in the present case. Similar provisions of municipal charters have been considered by the court in a number of cases. In City of Detroit v. Michigan Pav. Co., 36 Mich. 335, it was held that the city could not be held for the expense of a public improvement, except under express contract conforming to charter conditions, and was not liable upon an implied contract. * * * Any other rule would open the door in every case to an evasion of the statute; for, when a substantial departure is made, if it may be lawfully made by the board, and bind the city, the compensation provided by the contract is no longer controlling, and a deviation which a jury may say is substantial would entitle the contractor in every case to recover on the quantum meruit."

. It is apparent that this decision was rested on the sole ground that the provisions in the charter and laws of Detroit, requiring that the work should be let to the lowest responsible bidder, and in accordance with plans and specifications, was inconsistent with the power to increase the cost of construction by authorizing extra compensation in consequence of substantial changes in the plans and specifications, by which the manifest purpose of the statute would be defeated. The judgment evidently proceeded upon the ground that the power to make substantial changes and contract for extra compensation was forbidden by necessary implication in the charter provision that the work should be let to the lowest responsible bidder, and according to previously prepared plans and specifications. The case is therefore clearly distinguishable from the one at bar, in which there is no statutory limitation or restriction similar in terms or effect to the one on which the ruling rested in Campau v. City of Detroit, 106 Mich. 418, 64 N. W. 336.

The distinction between the exercise of powers requiring judgment and discretion and the performance of merely ministerial duties in relation to detail was not under consideration in any other Michigan case to which we have been referred; and certainly none

of these cases deny the distinction, which is now fully recognized and established by well-considered cases in other jurisdictions. Upon the whole case, we conclude that there is no error in the record prejudicial to the plaintiff in error. Judgment affirmed.