UNION·PAC. R. CO. v. MASON CITY & FT. D. R. CO.

(Circuit Court of Appeals, Eighth Circuit. February 29, 1904.)

No. 1,975.

1. OBITER DICTUM—RAILROADS—DECLARATION OF DUTY A CONTROLLING DE-
CISION.
The declaration of the Supreme Court in Union Pacific Ry. Co. v. Chicago, etc., Ry. Co., 16 Sup. Ct. 1173, 163 U. S.·564, 586, 41 L. Ed. 265, that the provisions·of the Pacific Railroad acts relating to the bridge over the Missouri river imposed upon the Pacific Company the duty of permitting the Rock Island Company to run its engines and trains over the bridge

and tracks of the Pacific Company between Council Bluffs, Omaha, and South Omaha, was a controlling adjudication of the question, and not an obiter dictum.

2. SAME—WHAT CONSTITUTES.

Where a court places its decision of the ultimate legal issue before it upon its decisions of two legal questions which were pertinent to the issue, debated at the bar, considered and determined in the opinion, the decision of either one of which is sufficient to sustain the determination of the ultimate issue, the decision of each of the two questions and of every pertinent legal question decided in reaching either decision has the binding force of an adjudication, and is not a mere obiter dictum.

3. CORPORATION CHARTER—RESERVATION OF POWER TO AMEND.

The reservation of a power to add to, alter, amend, or repeal a charter authorizes the proper legislative body to make any addition, alteration or amendment which does not impair vested rights or substantially interfere with the accomplishment of the main purpose of the charter.

4. RAILROAD CORPORATION CHARTER—RESERVATION OF POWER TO AMEND.

The reservation, in the charter of a railroad company, of the power to add to, alter, amend, or repeal, includes the reservation of power to condition the title to a bridge and to terminal facilities with the provision that the joint use of them shall be allowed to other railroad companies for reasonable compensation, provided that this use does not deprive the holder of the property of the use of it requisite to the handling of its own engines and trains, to the conduct of its own business, and to the discharge of its corporate duty to the government and to the public.

5. SAME—NEITHER MORTGAGEE NOR PURCHASER AT FORECLOSURE SALE ACQUIRE TITLE FREE FROM THE USE IMPOSED UNDER RESERVATION IN CHARTER.

A mortgagee, or the purchaser at a foreclosure sale of the right of the mortgagee to the property of a mortgagor railroad company, which held its title under a charter that reserved the right of addition, alteration, and amendment, take their interests in the property subject to the right of the proper legislative body to exercise, at any time during the possession of the mortgagor and the existence of the mortgage, its reserved power of addition and amendment, and thereby to condition the title and use of the property with the requirement that other railroad companies shall be permitted to use it to the same extent as though the mortgage had never been made. The mortgagee and the purchaser under him get nothing which the mortgagor had not, and acquire no vested rights as against the legislative body and its beneficiaries.

6. SAME—POWER TO EXTEND RAILROAD ON DETERMINATION OF DIRECTORS INCLUDES POWER TO ACQUIRE USE OF TERMINAL FACILITIES OF OTHER COMPANIES IN ANOTHER STATE BY ACTION OF DIRECTORS.

The power to construct or extend a railroad beyond the points designated in the articles of incorporation of the company which owns it, "as the board of directors of said corporation may determine and designate," includes the power to acquire and enjoy the use of a bridge, a station, and the railroad tracks of another company beyond such points, and in another state, upon the determination and designation of the board of directors, and upon compliance with the laws of both states relative to the acquisition and use of property by such a corporation therein.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

For opinion below, see 124 Fed. 409.

This is an appeal from a decree of the Circuit Court for the District of Nebraska to the effect that the Union Pacific Railroad Company shall admit the Mason City & Ft. Dodge Railroad Company to the equal and joint use of its bridge across the Missouri river between Council Bluffs, Iowa, and Omaha, Neb., to its passenger station at Omaha, and to its main and passing railroad tracks between Council Bluffs, Omaha, and South Omaha, upon the terms and

conditions specified in the contract between the Union Pacific Railway Company and the Chicago, Rock Island & Pacific Railway Company which was sustained by the Supreme Court in Union Pac. Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265. The controversy which resulted in this decree involves the same property between Council Bluffs, Omaha, and South Omaha that is described in the statement and opinion, and that was the subject of the litigation which was closed by that decision. The appellant in this case is the purchaser of this property at a sale of it made in 1897 under the foreclosure of the first mortgage upon it which was made by the old Union Pacific Railroad Company on March 1, 1865. The Mason City & Ft. Dodge Railroad Company owns a railroad which extends from Council Bluffs, Iowa, to Manley Junction and to Hampton, in the state of Iowa, where it connects with the railroads of the Chicago Great Western Railway Company, and forms with these railways through lines of railroad from Council Bluffs to Chicago, Ill., to St. Paul and Minneapolis, Minn., and to Kansas City, in the state of Missouri. The Mason City Company sought by this suit to secure, and the decree below granted to it, access with its engines and trains to Omaha and South Omaha, and to the railroads entering those cities from the west and south, by means of the joint use of the bridge and railroads of the appellant, on the ground that the duty was imposed upon the latter company to grant to the Mason City Company this right, upon the payment by the appellee of reasonable compensation for the use of the bridge, station, and track, by the acts of Congress of July 1, 1862, c. 120, 12 Stat. 489; July 2, 1864, c. 216, 13 Stat. 356, 362; July 25, 1866, c. 246, 14 Stat. 244; and February 24, 1871, c. 67, 16 Stat. 430. These acts of Congress, and especially those provisions in them that are pertinent to the questions presented in this case, were recited, discussed, and analyzed in the Rock Island Case both in the Supreme Court and in the inferior courts, and it is believed that a reference to the opinions in that case will indicate their purpose and effect as well as an extended recital of them here. (C. C.) 47 Fed. 15; 51 Fed. 309, 321, 322, 2 C. C. A. 174; 163 U. S. 564, 585–589, 16 Sup. Ct. 1173, 41 L. Ed. 265. The decree of the Circuit Court is assailed on many grounds, which are considered in the opinion.

John N. Baldwin (W. R. Kelly, on the brief), for appellant.

Frank B. Kellogg and James M. Woolworth (William D. McHugh and Cordenio A. Severance, on the brief), for appellee.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The chief contention of counsel for the Pacific Company is that the decree below is erroneous (1) because the acts of Congress never imposed upon the Union Pacific Railroad Company, the mortgagor under whose first mortgage of March 1, 1865, the appellant holds the property in question, nor upon its successor, the duty to grant the joint use of its bridge at Omaha, its passenger station in that city, or its railroad between Council Bluffs and Omaha to the appellee, or to any other railroad company; and (2) because, if such a duty was imposed upon it, it did not extend so far as to require that company, or any of its successors in interest, to grant to the appellee, or to any other railroad company, the use of its tracks or the use of its other transportation facilities between Omaha and South Omaha, or at any point west of Twentieth street in the former city.

The arguments and authorities in support of the position here taken by counsel for the appellant admonish us that the questions which it presents are grave, difficult, and of doubtful solution. We are, however, met at the threshhold of our investigation by the

insistent claim of counsel for the appellee that each of the questions presented by this contention has been conclusively answered by the Supreme Court in Union Pacific Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265. The opinion in that case was rendered by the Supreme Court of the United States, a court whose decisions command and always cheerfully receive the acquiescence of this and all inferior courts, and, if it has decided the legal issues pressed upon our consideration, it is neither the province nor the duty of this court to discuss or consider them. So the first question which presents itself for our determination involves a consideration of the nature and effect of the decision in the Rock Island Case.

In that case the Union Pacific Railway Company, the successor in interest of the Union Pacific Railroad Company, which made the mortgage of March 1, 1865, had made a contract with the Rock Island Company to grant to it the joint and equal use of its bridge and passenger station at Omaha, and of its railroads from Council Bluffs to Omaha and South Omaha, upon the same terms upon which this decree requires the appellant to grant the use of these facilities to the Mason City Company. The Pacific Railway Company refused to perform this agreement, and the Rock Island Company brought a suit in equity to compel its performance. The chief defense which the Pacific Company presented was that the making of the contract was beyond its corporate powers. The counsel for the Rock Island Company answered that the powers of the Pacific Company were ample to permit it to enter upon and to execute the agreement between them (1) because the authority so to do was one of those incidental powers necessary to the full and convenient exercise of the authority to construct and operate a railroad, which had been expressly granted to it by its charter, and (2) because the act of July 25, 1866, c. 246, 14 Stat. 244, and the act of February 24, 1871, c. 67, 16 Stat. 430, relating to the Omaha Bridge, had expressly granted this authority to it. The Supreme Court considered and discussed at length, in the order in which they have been stated, each of the reasons which had been urged by counsel for the Rock Island Company for the existence of this corporate power. At the close of the discussion of the first reason, that court said:

"We think that it would be carrying the doctrine of ultra vires much too far to deny absolutely the competency of a railroad company, being a public highway, whose use is common to all citizens, to contract to give another running rights over its tracks without express statutory authority; and that, under proper circumstances, such a contract may well be held within its implied powers. In Lake Superior Railway Co. v. United States, 93 U. S. 442 [23 L. Ed. 965], Mr. Justice Bradley adverts to and comments on the fact that, in England and in this country, railroads when first constructed were by the legislatures and the people regarded and treated as public highways for the use of all who had occasion to run their vehicles thereon; and this is certainly so far true in modern acceptation that, being for the common use of the public, their owners are ordinarily competent to make contracts which will subserve such use. But the determination of the existence of the power to grant running rights in this instance does not rest on these considerations alone. For the provisions of the Pacific Railroad acts relating to the bridge over the Missouri river, its construction and operation, imposed on the Pacific Company the duty of permitting the Rock Island Company to run its engines, cars, and

trains over the bridge and the tracks between Council Bluffs and Omaha, and we think that South Omaha was included."

The court then proceeded to discuss the acts of Congress relating to the Omaha Bridge of the Pacific Company, and at the conclusion of that discussion held that it was within the corporate powers of that company to make the contract with the Rock Island Company which was in issue in that case. Union Pacific Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 585, 589, 16 Sup. Ct. 1173, 41 L. Ed. 265. In this opinion the Supreme Court clearly declared that the provisions of the Pacific Railroad acts relating to the bridge over the Missouri river imposed upon the Pacific Company the duty of permitting the Rock Island Company to run its engines, cars, and trains over the bridge and over the tracks between Council Bluffs, Omaha, and South Omaha. Unless the appellant has escaped the imposition of this duty because it holds the bridge and tracks under the mortgage of March 1, 1865, and not by virtue of a conveyance from the mortgagor or its grantee made subsequent to the Omaha Bridge act of February 24, 1871, c. 67, 16 Stat. 430, a question which will be subsequently considered, it owes the same duty to the Mason City Company now that the Pacific Railway Company owed to the Rock Island Company in 1890 before the contract between them was made, because the Mason City Company is practically in the same situation and has the same need of the use of these transportation facilities to-day that the Rock Island Company occupied and had at that time. The conclusion necessarily follows that the two reasons for the reversal of the decree below which are stated at the opening of this opinion cannot be sustained or considered by this court, unless it is at liberty to disregard the declaration of the opinion of the Supreme Court upon the very question they present, which that court so clearly announced in the Rock Island Case. May this court lawfully do so?

Counsel for the appellant argue, with great ability, ingenuity, and force, that the decision of this question was not necessary to the determination of the main issue presented in the Rock Island Case; that the real question in that case was the power of the Pacific Company to make the contract there under consideration, and not its duty to grant the joint use of its transportation facilities to other railroad companies. They insist that all that was said upon the subject of its duty to the Rock Island Company was the mere obiter dictum of Mr. Chief Justice Fuller, who delivered the opinion. They recite again and rely upon the oft-quoted words of Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257, that "it is a maxim, not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason for this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is

seldom completely investigated"—and they insist that this court is not bound by the expression of opinion upon this question in the Rock Island Case, and that it should disregard it and consider the issue as a new question.

It is true that the power to grant the joint use of its transportation facilities at Council Bluffs, Omaha, and South Omaha might exist in the Pacific Company without the duty to grant them. But it is also true that the duty could not exist without the power. If the duty existed, it was imposed by the Congress, which had the authority to grant the power, and the imposition of the duty necessarily carried with it the power to discharge that duty. The opinion of the Supreme Court upon the second reason assigned by counsel for the Rock Island Company for the existence in the Pacific Company of the power to make the contract between the companies, when analyzed and stated in syllogistic form, reads in this way: The Congress of the United States, by its acts relating to the bridge over the Missouri river, imposed upon the Pacific Company the duty of permitting the Rock Island Company to use the bridge and the other transportation facilities of the Pacific Company between Council Bluffs, Omaha, and South Omaha. The imposition of this duty necessarily carried with it the grant of the power to discharge it. Therefore the Pacific Company had the power to make the contract which granted this permission. Now, how can the position be successfully maintained that the decision of the question involved in the major premise of this syllogism was beyond the case under the consideration of the court, or unnecessary to its decision, when a determination that no such duty was imposed would have been fatal to the argument, and would necessarily have resulted in the conclusion that no power to make the contract was granted by the acts of Congress relating to the Omaha Bridge? No satisfactory answer to this question has been made, and the conclusion is inevitable that the consideration and decision of the question whether or not it was the duty of the Pacific Company under the acts of Congress relative to the Omaha Bridge to permit the Rock Island Company to use the transportation facilities in question was necessary to and determinative of the decision that the Pacific Company had the power under those acts to grant to the Rock Island Company the permission to use them.

It is, however, contended that it was unnecessary to the determination of the ultimate question before it for the court to decide the latter question at all; that it was unnecessary for it to determine whether or not the Pacific Company had the corporate power to make the contract under the acts relating to the Omaha Bridge, because it had already decided in the earlier part of its opinion, and before it reached the discussion and decision of this question, that the Pacific Company had this power under its general grant of authority to construct and operate railroads. It is contended that because the court based its decision of the ultimate question upon its decisions of these two questions of law, each of which was debated, discussed, and deliberately decided, and the decision of either one of which furnished ample ground to sustain the ultimate conclusion, the decision of one of these preliminary questions was unnecessary, and

all that was said about it was obiter dictum. This argument, however, proves too much. If it establishes anything, it proves that, in every case in which a court places its adjudication of the ultimate issue of law upon its decisions of two or more legal questions, the decision of either of which is sufficient to sustain its adjudication, it decides nothing; that each of its preliminary decisions is unnecessary because the other or the others are sufficient to sustain the adjudication without it, and hence that all of them in turn may be held to be obiter dicta. Such is not the law. Where the conclusion of the court may be sustained by decisions of two or more questions of law that are fairly presented for its determination, the province and duty of the court which prepares the opinion and renders the decision is to determine whether it will rest its conclusion upon one or more of these legal issues, and where it places its ultimate adjudication upon two or more propositions of law which it properly discusses and decides, either one of which is sufficient to sustain its conclusion, each decision of each of the propositions is within the limits of the case presented to it, and is a conclusive and binding adjudication of the court. The decisions of all the legal propositions upon which the court places its adjudication of the ultimate legal question are pertinent and logically lead alike to the final conclusion, and they are alike decisive of the questions which they determine. Railroad Cos. v. Schutte, 103 U. S. 118, 143, 26 L. Ed. 327; Buchner v. Chicago, Milwaukee & N. W. Ry. Co., 60 Wis. 264, 270, 273, 19 N. W. 56; Alexander v. Worthington, 5 Md. 471, 481; Jones v. Habersham, 107 U. S. 174, 179, 2 Sup. Ct. 336, 27 L. Ed. 401.

Concede that the decision of the Supreme Court, that the power of the Pacific Company to make the contract with the Rock Island Company might be implied from the general grant of power to construct and operate its railroads, was ample to support its ultimate conclusion, and that it was unnecessary for it to decide that the duty was imposed upon that company, and that the power was granted to it so to do by the acts relating to the Omaha Bridge; yet it is equally true that the decision of the latter question was also sufficient to sustain its ultimate determination, and that the former decision was equally unnecessary to that conclusion. Yet each of these two questions was debated at the bar of the Supreme Court, each of them was pertinent to the legal issue which that court was compelled to decide, each of them was discussed and decided by that court, and was one of the logical steps to the determination of the ultimate legal issue which it was required to decide, and it placed its determination of that issue upon its decision of both of these questions, and upon its decision of one as much as upon its determination of the other. That court necessarily decided, when it approved and delivered its opinion—and that decision is not open to review or criticism here—that the discussion and decision of each of these two questions was within the case before it, and essential to the determination of the ultimate issue it was considering. If it had not so decided, it would not have discussed with equal care and labor, and have decided with equal clearness and certainty, each of these issues of law. It did not disregard or discard one of these questions and

place its decision upon a determination of the other, and an inferior court cannot now lawfully do so, because it cannot know upon which proposition the Supreme Court would prefer to rest its conclusion, if it were compelled to choose between them. The result is that the discussion and determination of each of these two questions must be considered within the limits of the case, pertinent and essential to the determination of the ultimate issue of law presented to the Supreme Court. It necessarily follows, as a corollary to this conclusion, that the discussion and decision of every legal question pertinent and essential to the determination of either of the two questions to which reference has been made was within the case before the court, and the determination of it became a binding and conclusive adjudication of the question in all the courts of the nation. The decision that, under the acts of Congress relating to the Omaha Bridge, the duty was imposed upon the Pacific Company to grant the use of its transportation facilities between Council Bluffs, Omaha, and South Omaha to the Rock Island Company, was the major premise of the argument, and was indispensable to the decision of the Supreme Court that under those acts the corporate power to make the contract with the Rock Island Company was granted to the Pacific Company, and that adjudication is therefore as binding and conclusive upon this and upon all inferior courts as the decision by that court of any other pertinent legal question properly presented to it for determination. The considerations to which reference has now been made have forced our minds irresistibly to the conclusion that the question whether or not the Pacific Railroad acts relating to the Omaha Bridge imposed upon the Union Pacific Railway Company the duty to grant to the Rock Island Company and to other companies, like the respondent, which are similarly situated, the joint and equal use of its transportation facilities described in the decree below, not only between Council Bluffs and Omaha, but also between Omaha and South Omaha, has been conclusively determined by the decision of the Supreme Court in the Rock Island Case, and that it is not open to our consideration or decision. The clear declaration of the opinion of the Supreme Court upon this question in the Rock Island Case does not appear to us to be the mere obiter dictum of the Chief Justice, who wrote it, and, even if we are in error in this conclusion, the declaration of that fact and the reversal of the decision there expressed will come with much better grace from the court which delivered the opinion, to which this case is removable by appeal, than from an inferior court, which ought not to presume, even when the answer to the question is doubtful, that the court whose decisions advise and control its determinations has unnecessarily or unadvisedly determined a question which was not lawfully presented for its consideration.

The conclusion at which we have now arrived renders the consideration of the questions relative to the Saunders deed and the tripartite agreement under which the Mason City Company claims the right to the use of the bridge, station, and tracks in question unnecessary to a decision of this case, and they will neither be stated nor decided.

Counsel for the appellant insist, however, that even if the duty was imposed upon the mortgagor company, or upon its successor in interest, the Union Pacific Railway Company, by the act of February 24, 1871, c. 67, 16 Stat. 430, to permit other railroad companies to enjoy the joint use of its bridge and transportation facilities at and near the city of Omaha, no such duty was ever fastened upon the appellant, because it is the purchaser of this property at the foreclosure sale of it under the mortgage of March 1, 1865, and it takes the title to it in the condition in which it was at the time the mortgage was given, and free from the burden placed upon it by the act of 1871. But the mortgagee and the purchaser under the mortgagee took their lien upon and title to this property subject to the terms and conditions of the grant of the franchise to the mortgagor to construct and operate the Pacific Railroads contained in the acts of July 1, 1862, c. 120, 12 Stat. 489, and July 2, 1864, c. 216, 13 Stat. 356, 362. One of the conditions of this grant was that Congress might at any time, "to promote the public interest and welfare, * * * having due regard for the rights of said companies named herein, add to, alter, amend or repeal this act." 12 Stat. 489, 497, § 18; 13 Stat. 356, 365, § 22. The act of February 24, 1871, c. 67, 16 Stat. 430, which imposed the duty to permit other railroad companies to use the bridge, station, and tracks, was an addition by Congress to the original grant of the franchise to the Union Pacific Railroad Company. It added to the authority given by that grant the power to issue bonds to the amount of $2,700,000 for the purpose of raising the necessary funds to construct the bridge and its approaches, and the authority to mortgage this property to secure the payment of the bonds. It added to the conditions and burdens under which the property acquired under the original franchise might be held and operated the condition that permission should be given to other railroad companies to use the bridge, its approaches and appurtenances, upon payment of reasonable compensation therefor, and that Congress should at all times have the right to regulate the bridge and the rates for the transportation over it of freight and passengers. The reservation of a power to add to, alter, amend, or repeal a charter authorizes the proper legislative body to make any addition, alteration, or amendment which does not substantially impair vested rights or directly impede the accomplishment of the purpose of the grant, and which the legislative body deems proper to secure the best interests of the public. Sinking-Fund Cases, 99 U. S. 700, 720, 721, 25 L. Ed. 496; New York & N. E. Railroad Co. v. Bristol, 151 U. S. 556, 567, 14 Sup. Ct. 437, 38 L. Ed. 269. The mortgagee and the purchaser under the foreclosure of the mortgage of the property of a corporation held under a charter subject to a reservation of the power of addition or amendment take their lien and interest in the property subject to the right of the proper legislative body to exercise its power to condition the title and use of the property, as long as it is held by the mortgagor, to the same extent as if no mortgage had ever been made. The mortgagor cannot convey, nor can the mortgagee acquire, as against the grantor of the franchise and its beneficiaries, more than the mortgagor has

to give. Neither the mortgagee nor the purchaser at a foreclosure sale under him can acquire, as against the government and its beneficiaries, vested rights in the face of such a reservation of the power of amendment properly exercised before the foreclosure. Chicago, Burlington & Quincy R. Co. v. Iowa, 94 U. S. 155, 162, 24 L. Ed. 94. The imposition by the act of 1871 of the duty to permit other railroad companies to enjoy the joint use of the bridge, the station, and the tracks, which constituted a part of the terminal facilities of the Pacific Company at the three cities, upon payment of reasonable compensation therefor, impaired no vested right of the railroad company, or of its first mortgage bondholders, so long as the discharge of this duty did not substantially interfere with the present or prospective use of these facilities by the holder of the Union Pacific Railroad, or with the discharge by it of the duties which that company owed to the government and to the public under its franchise. Tomlinson v. Jessup, 15 Wall. 454, 459, 21 L. Ed. 204; Miller v. The State, 15 Wall. 478, 498, 21 L. Ed. 98; Railroad Co. v. Maine, 96 U. S. 510, 24 L. Ed. 836; Pearsall v. Great Northern Ry. Co., 161 U. S. 646, 656, 16 Sup. Ct. 705, 40 L. Ed. 838. In Tomlinson v. Jessup, Mr. Justice Field, speaking for the Supreme Court of the power to amend reserved in a charter, said: "The reservation affects the entire relation between the state and the corporation, and places under legislative control all rights, privileges, and immunities derived directly from the state." The old Union Pacific Railroad Company, which made the mortgage upon which the appellant relies, acquired its right of existence, and its right to acquire, hold, and use these terminal facilities, from the acts of 1862 and 1864, which contained the reservation which we have recited, and no one could acquire from that corporation any right to this property which was not conditioned by it and by the subsequent exercise of the reserved power by the act of 1871. The appellant bought this property subject to this condition and burden. The joint use of it which the decree below requires it to allow to the Mason City Company does not deprive it of that use of its facilities which is necessary to the handling of its own engines, cars, and trains, the conduct of its own business, and the discharge of its corporate duties to the government and to the public. Neither the imposition of the duty, nor the discharge of that duty which the decree requires, impairs any vested right of the appellant or of its predecessors in interest. Both the imposition of the duty and the discharge of it fall far within the power reserved to the Congress in the original grant, and within the provisions of the act of 1871 as that act has been construed by the Supreme Court in the Rock Island Case, and all the rights of the appellant were acquired subject to and with notice both of the duty that had been imposed before its purchase and of the effect which the discharge of that duty would have upon the property and its use. There is no escape for the appellant from the discharge of this duty upon the ground that under the foreclosure of the first mortgage it takes the title which the Union Pacific Railroad Company had on March 1, 1865, free from the duty imposed by the act of 1871; because that title was subject, when the mortgage was made, to the

reserved right of the Congress to condition the use and enjoyment of the property here in question, with the discharge of the duty imposed upon its owner by the act of 1871, and by the decree of the Circuit Court for the District of Nebraska which it here challenges.

The next contention of counsel for the appellant is that the decree should be reversed because the evidence discloses no necessity for the Mason City Company to use the transportation facilities in question, and no probability of irreparable injury to it from the refusal of its use of them. It is said that there is another railroad bridge across the Missouri river at Omaha, owned and operated by another corporation; that the Mason City Company can obtain, by agreement with that corporation, the use of facilities for the transfer of its engines, trains, and business from Council Bluffs to the railroads entering Omaha and South Omaha from the South and West as serviceable to it as that provided by the decree; and that, if it does not desire to obtain the use of a bridge and tracks in this way, it can construct a new bridge across the river and new railroads between the three cities. The latter suggestion is unworthy of serious consideration. It is undoubtedly possible, but it is neither practicable nor advisable, either in the interest of the appellee or in the interest of the public whom it serves, that that company should invest the large amount of money that would be required to construct another bridge and to purchase a right of way through the city of Omaha, and that it should consequently impose upon the traffic of the country the tax that would be necessary to pay it a fair income upon such an investment.

The allegation that the Mason City Company can, by contract with the owner of the other bridge, secure the use of transportation facilities as serviceable to it as the use of those secured by the decree in this case, is denied by its counsel, and the proof does not satisfactorily support the averment. But suppose that this allegation were true; would that fact be a conclusive defense to the claim of the appellee that the Pacific Company shall discharge the duty which it owes to it under the act of 1871? A. agrees to convey to B. a lot in a city for a certain price. Is it any answer to B.'s bill for specific performance of the agreement that he can obtain another lot of equal value and equally useful to him from C. for the same price, and that consequently no irreparable injury will result to him from the refusal of A. to perform his contract? The state grants a franchise to a corporation to operate a railroad upon the condition that the grantee shall transport the goods of all shippers upon the same terms. Is it any answer to a bill to compel the railroad company to discharge this duty to a shipper that the latter can procure the transportation of his goods to their destination by another railroad company upon the terms he seeks, and that the refusal of the first company to discharge its duty to him will therefore inflict no irremediable loss upon him? The appellant owes the Mason City Company the duty of permitting it to enjoy the joint use of its bridge, station, and tracks for reasonable compensation. The proof is plenary that the appellee needs this use to bear its traffic from Council Bluffs to the railroads entering Omaha and South Omaha from the

West and South, and that the refusal of it must entail upon it substantial loss and damage.   It is apparent that this injury is in its nature incapable of computation and insusceptible of proof, so that an action at law for damages could not afford adequate compensation for it.   It is evident that the public interest, the interest of shippers, producers, and consumers alike, will be served, by the use of this property by the Mason City Company, by the increase of competition which naturally results from the admission of an independent line of railroad into great cities.   The existence of the duty, the need of its performance on the part of the party to whom it is due, and the certainty of substantial and incalculable injury to it from a refusal of the party which owes it, furnish substantial and ample grounds to invoke the favorable action of the chancellor.   The great purpose of the imposition upon the Pacific Company of the duty of permitting other railroad companies to use its bridge, approaches, and appurtenances by the act of 1871 was to provide a ready and facile means for the connection of the railroads entering Council Bluffs from the East with those entering Omaha and South Omaha from the South and West.   The Mason City Company enters Council Bluffs from the East.   It needs and demands the connection which the act of 1871 provided for it.   A refusal of this connection must entail upon it substantial and incalculable injury.   The decree compels the connection, enforces the discharge of the duty which the Pacific Company owes to the appellee, and thus accomplishes the chief object of the act of Congress which imposed the duty.   This decree ought not to be reversed either because the appellee could procure its connection with Southern and Western railroads by the use of another bridge or by the construction of a new bridge, nor because, although the injury to the appellee from a refusal to compel the discharge of the duty would be great and incapable of calculation or proof, it would not be impossible of satisfaction if its amount could be ascertained.

Finally, it is contended that the decree should be reversed because the Mason City Company has no corporate power to acquire or hold any interest in, or use of the property of, the Pacific Company in the state of Nebraska.   The Mason City Company is a corporation of the state of Iowa.   On January 7, 1903, it accepted by a proper resolution of its board of directors, and on January 13, 1903, it filed its articles of incorporation with the Secretary of the State of Nebraska, and complied with the terms of the act of the Legislature of that state approved March 19, 1889, p. 407, c. 42, entitled "An act to enable foreign corporations to become domestic corporations of this state."   Comp. St. Neb. 1901, c. 16, § 215.   It thereby acquired the right to hold and use any interest in property in the state of Nebraska which the laws of Iowa and its articles of incorporation authorized it to acquire or use.   The statutes of Iowa provide that any such corporation organized for the purpose of constructing a railway from a point within that state may construct or extend the same into or through another state under such regulations as may be prescribed by the laws of the latter state.   St. Iowa. 1897, § 2038.

128 F.—16

The articles of incorporation of the company provide that "the object of said corporation is to construct, maintain and operate a railroad from Mason City in the county of Cerro Gordo to Ft. Dodge in the county of Webster in said state, thence to Lehigh in said county of Webster and thence from a point on its line at or near said Lehigh in a southwesterly direction to the city of Council Bluffs in the county of Pottawattamie in said state of Iowa with such lateral branches from any point on its said line and such extensions beyond each and every of said points, as the board of directors of said corporation may determine upon and designate and the law permit." On October 28, 1902, the officers of the company were authorized and directed, by a proper resolution of its board of directors, to negotiate for, to demand, and to enforce by this or other suits its demand for the use of the bridge, of the station, and of the transportation facilities of the appellant which has been awarded by the decree below.

The argument in support of the proposition that this company has no corporate power to acquire or enjoy the use of these transportation facilities of the Pacific Company in the state of Nebraska is this: The charter of a corporation is the measure of its powers; the enumeration of the powers there contained is the exclusion of all others. The power to acquire and enjoy the use of transportation facilities or of property in the state of Nebraska is not enumerated in the articles of incorporation which constitute the charter of the Mason City Company. Therefore that company has no such corporate power. The major premise is conceded. The minor premise and the conclusion do not appear to be sustained by the facts. The statutes of Iowa provided, as we have seen, that this corporation, and any other corporation organized for the purpose of constructing a railroad from a point within that state, might build or extend the same into or through any other state under such regulations as the laws of that state might prescribe. This company complied with the regulations which the state of Nebraska prescribed to enable it to construct or extend, and to acquire and hold, the necessary property to enable it to operate its railroad in and through that state. Its articles of incorporation empowered it to build and operate its railroad from Ft. Dodge to Council Bluffs, with "such extensions beyond each and every of said points as the board of directors of said corporation may determine upon and designate and the law permit." The acquisition of the joint and equal use of the bridge over the Missouri river, of the station at Omaha, and of the railroads of the Pacific Company between the three cities was in practical and in legal effect an extension of the railroad of the Mason City Company from Council Bluffs to Omaha and to South Omaha. The laws of Iowa and Nebraska permitted, nay, they authorized, such an extension, upon the single condition that the board of directors should determine upon and designate it. The resolution of the board of October 22, 1902, which empowered and directed the officers of the Mason City Company to demand and enforce its demand for the use of the transportation facilities of the Pacific Company between Council Bluffs and Omaha and South Omaha was a complete com-

pliance with this condition, and the acquisition and enjoyment of that use are not beyond the corporate powers of the appellee.

The result of the whole matter is that, under the opinion of the Supreme Court in Union Pacific Ry. Co., v. Chicago, etc., Ry. Co., 163 U. S. 564, 586, 16 Sup. Ct. 1173, 41 L. Ed. 265, to the effect that the appellant in that case owed to the Rock Island Company the duty, under the Pacific Railroad acts relating to the Omaha Bridge, to permit it to use the very facilities in question in this case—an opinion which this court, for reasons which have been fully stated, does not feel at liberty to criticise or disregard—there is no escape from the conclusion that the appellee is entitled to the relief granted to it by the decree below. That decree must accordingly be affirmed, and it is so ordered.