THOMPKINS v. MISSOURI, K. & T. RY. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. January 28, 1914.)

No. 3,866.

*(Syllabus by the Court.)*

1. CARRIERS (§ 411*)—SLEEPING CAR COMPANIES—DUTY·TO PASSENGERS—ACTIONABLE NEGLIGENCE.

It is the duty of the Pullman Company to exercise reasonable care and diligence to protect the passengers in its cars from unlawful discomforts, attacks, inconveniences, insults, and injuries. That duty, however, does not require it or its employés to substitute their opinions of the law and of the duty of officers of the law for the judgment of the latter and to interfere with and obstruct the discharge by the officers of their duties, and the failure of the Pullman Company and its employés to obstruct, interfere with, or prevent the arrest and removal of a passenger from a car by the officers of the law does not constitute actionable negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1579, 1581; Dec. Dig. § 411.*

Duties and liabilities of sleeping car companies, see notes to Duval v. Pullman Palace Car Co., 10 C. C. A. 335; Edmundson v. Pullman Palace Car Co., 34 C. C. A. 386; Bacon v. Pullman Co., 89 C. C. A. 10.]

2. MALICIOUS PROSECUTION (§ 58*)—EVIDENCE—ADMISSIBILITY.

In an action for both actual and punitive damages for causing the ejection of a passenger from a train, his arrest, and his fine by a justice of the peace, the complaint, warrant, and ·a transcript of the record of the justice are, after the plaintiff·has testified to the proceedings before the justice, admissible evidence to show what those proceedings were and who conducted them and to mitigate the damages or to defeat the claim therefor.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 117–124; Dec. Dig. § 58.*]

3. APPEAL AND ERROR (§ 263*)—EXCEPTION TO INSTRUCTIONS—NECESSITY.

An exception before the jury retires to the charge, or to the portion of the charge of the court which a litigant desires to challenge, is ordinarily indispensable to its review in a federal appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. § 263.*]

4. APPEAL AND ERROR (§ 237*)—VERDICT—SUFFICIENCY OF EVIDENCE—SCOPE OF REVIEW.

A federal appellate court may not review the verdict or the finding of facts by a jury in the absence of a request to the trial court to instruct them in whose favor to find on the ground that evidence is so conclusive that no other verdict can be sustained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1302½; Dec. Dig. § 237.*]

5. APPEAL AND ERROR (§ 978*)—DISCRETIONARY RULING—NEW TRIAL.

A ruling on a motion for a new trial on account of the bias and prejudice of the jury, unsupported by any evidence except the evidence on the issues tried, is discretionary with the trial court and is not reviewable by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

a federal appellate court in the absence of proof of an abuse of the discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig.* § 978.*]

6. COURTS (§ 405*)—FEDERAL COURT OF APPEALS—SCOPE OF REVIEW—ERRORS OF LAW.

A federal appellate court is, in an action at law, a court for the correction of errors of law of the trial court only. The burden is on him who alleges error to prove it to the appellate court by the record before it and in the absence of such proof the judgment below cannot be reversed, for the legal presumption is that the rulings of the court below were right.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

In Error to the District Court of the United States for the Western District of Missouri; A. S. Van Valkenburgh, Judge.

Action by William J. Thompkins against the Missouri, Kansas & Texas Railway Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Charles H. Calloway and W. C. Hueston, both of Kansas City, Mo., for plaintiff in error.

Ellison A. Neel, of Kansas City, Mo. (Joseph M. Bryson and Joseph W. Jamison, both of St. Louis, Mo., and Hadley, Cooper, Neel & Wilson, of Kansas City, Mo., on the brief), for defendant in error Missouri, K. & T. Ry. Co.

Cyrus Crane, of Kansas City, Mo. (Lathrop, Morrow, Fox & Moore and John H. Lathrop, all of Kansas City, Mo., on the brief), for defendant in error Pullman Co.

Before SANBORN, HOOK, and CARLAND, Circuit Judges.

SANBORN, Circuit Judge. The plaintiff complains of the trial of an action for damages for his ejection from a Pullman car in Oklahoma, and for his arrest, conviction, and fine for disturbing the peace. In the first count of his petition he alleged that at about 1 o'clock in the morning of December 31, 1910, at Kansas City, Mo., he purchased a railroad ticket of the railway company and a ticket for a berth in the Pullman car from the Pullman Company from Kansas City to McAlester, Okl., rode thereon and occupied his berth until about 9 o'clock that morning, when at Vinita, Okl., the defendant companies unlawfully, maliciously, and in an insulting manner compelled and caused officers of the law to compel him to leave the car and train and to remain at Vinita until the next train going toward McAlester came along and then to pay $3.81 fare for his passage to McAlester, to his injury in the sum of $25,003.81 actual damages and $25,000 punitive damages. In the second count of his petition he alleged the same facts, and that while he was detained at Vinita the defendants caused the officers of the law to take him before a justice of the peace under arrest on some charge of which he was not guilty and to compel him to pay $13, and he prayed damages in the sum of $25,016.81 actual damages and $25,000 punitive damages. The Pull-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

man Company answered that the acts of which the plaintiff complained were not done by it or any of its servants, but by the officers of the law against its wishes and against such opposition as it was lawful for it to make. The railway company answered that the plaintiff was a negro, that the separate coach law of Oklahoma (Compiled Laws of Oklahoma 1900 [Snyder] c. 9, art. 2, § 434, etc.) required it to provide separate coaches or compartments for negroes and whites and to properly label them, prohibited the members of either race from occupying a coach or compartment set apart for the members of the other race and required its conductors to prevent them from doing so, that it had provided such coaches or compartments on all its passenger trains, and that there was on the train in which the plaintiff was riding a separate coach for negroes equal in safety, comfort, and convenience to the Pullman car in which he was riding, that the latter had been set apart for whites and was so labeled, that it had adopted and published for the conduct of its transportation business regulations to the effect that the members of each race were forbidden to ride in the state of Oklahoma in the cars or compartments set apart by it for the members of the other race, that after the train in which plaintiff rode arrived in Oklahoma its conductor notified the plaintiff of these laws and regulations and requested him to take a seat in the car set apart for negroes, that he refused to do so, that the servants of the company then notified the officers of the law at Vinita of these facts, and when the train arrived at Vinita they pointed the plaintiff out at the request of the officers, that the railroad company and its servants had nothing more to do with the matters alleged in the petition, that the officers notified the plaintiff that he was violating the law, took him off the train, charged him in some court with such violation, that he pleaded guilty, was fined, and paid his fine.

As the plaintiff was an interstate passenger and the defendants in transporting him were engaged in interstate commerce over which the Congress had exclusive and the state of Oklahoma no jurisdiction, the court below tried the case on the theory, and at the close of the trial charged the jury, that the separate coach law of Oklahoma furnished no defense or justification for the acts of the defendant railway company, but that as Congress had made no regulation regarding separate coaches for the members of the two races the railway company had the power and right to make lawful regulations to the effect that no member of either race should ride on its railroads in Oklahoma in a coach or compartment set apart for the members of the other race, provided always that there was no discrimination in the accommodations furnished to the members of the two races and that such accommodations were equal in safety, comfort, and convenience (Chiles v. Chesapeake & Ohio Ry. Co., 218 U. S. 71, 30 Sup. Ct. 667, 54 L. Ed. 936), and no exception was taken to this charge. So it is that every question regarding the separate coach law of Oklahoma is excluded from the consideration of this court in this case and that law is here dismissed.

[1] The plaintiff specifies two errors in the trial of the case against the Pullman Company, that the court sustained its demurrer to the

second count of the petition and that at the close of the plaintiff's case it granted the motion to instruct the jury to return a verdict in is favor. The record, however, discloses no demurrer of the Pullman Company and no ruling on any such demurrer, and it contains no evidence that the Pullman Company, or any of its officers or employés, ever requested, or in any way caused or instigated, the removal of the plaintiff from the Pullman car in which he was riding, or any of the acts of which the plaintiff complains. In view of this state of the evidence, counsel argue, what was not pleaded in their complaint, that the Pullman Company is liable in damages here because neither its conductor nor its porter prevented or actively interfered to prevent the arrest and removal of the plaintiff from the car. The evidence was that the Railway Company's conductor asked the plaintiff if he was a negro and he replied that he was. The conductor then told him that it was a violation of the laws of Oklahoma for him to ride in the Pullman car which was set apart for whites and requested him to go into the car set apart for negroes. The plaintiff said that he had Pullman service and inquired if there was a Pullman car set apart for negroes, and the conductor informed him that there was not. The plaintiff then declared that he was an interstate passenger and was not subject to the Oklahoma law and refused to leave the car. The train conductor then sent to the officers of the law at Vinita the information that there was a negro riding in a car set apart for whites and afterward, in answer to an inquiry by the Pullman conductor, told him what he had done. When the train arrived at Vinita, the deputy sheriff of the county came into the car, displayed his badge of office, arrested and took the plaintiff from the car in the presence of the Pullman conductor and porter, who neither protested, objected, nor took any action to prevent it.

The statutes of Oklahoma empower peace officers to arrest persons for public offenses committed or attempted in their presence, for felonies committed and for felonies charged upon reasonable cause though they were not present when those offenses were committed, and those statutes declare that every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office is guilty of a misdemeanor. Comp. Laws of Oklahoma 1909 (Snyder) §§ 6603, 2207. It was the duty of the Pullman Company to exercise reasonable care and diligence to protect the passengers in its cars from unlawful discomforts, attacks, inconveniences, insults, and injuries; but that duty did not require it or its employés to substitute their opinions of the law and of the duty of officers of the law for the judgment of the latter and to interfere and obstruct the discharge by these officers of their duties, and the failure of the Pullman Company and its employés to obstruct, interfere with, or prevent the arrest and removal of the plaintiff from the Pullman car by the deputy sheriff did not constitute actionable negligence. Brunswick & W. R. Co. v. Ponder, 117 Ga. 63, 43 S. E. 430, 431, 60 L. R. A. 713, 97 Am. St. Rep. 152; Bowden v. Atlantic Coast Line R. Co., 144 N. C. 28, 56 S. E. 558, 12 Ann. Cas. 783.

[2] It is assigned as error that the trial court admitted in evidence copies of the complaint, warrant, and record in the court of the justice of the peace at Vinita in the case in which the plaintiff was fined on December 31, 1910, after he had been arrested and removed from the car. That complaint was made by Jacob Smith, the deputy sheriff, and it charged the plaintiff with "the crime of disturbing the peace" at the depot in Vinita. The warrant recited that Jacob Smith had filed a complaint which charged the plaintiff with that crime and commanded the sheriff to arrest and bring him before the justice. The record of the justice was that the complaint was filed, that the warrant was issued, that the plaintiff was arrested, brought into court and arraigned, and that he pleaded guilty, was fined one dollar and costs, paid the fine, and was discharged. When these copies were admitted in evidence, the plaintiff had testified to the acts of the conductor of the railway company on the train, to his arrest and removal from the train by the deputy sheriff Smith, that Smith met a judge and told him that the plaintiff was the man whom he took off the train, and the judge informed him he ought to have a warrant for him, that Smith took him to the justice of the peace and told the latter that he was a negro riding in the white folks car. The plaintiff answered, "No, I was riding in the Pullman car." The justice said, "What charge are you going to put against him?" Smith answered, "Disturbing the peace." The plaintiff said, "Whose peace have I disturbed?" The justice said, "Well, we will put a misdemeanor against you." The plaintiff said, "What misdemeanor have I committed?" The justice said, "Well, you were riding in the white folks car." The plaintiff said, "No, sir; in the Pullman car." The justice said, "Well, there were white folks in there." The plaintiff said, "Yes, sir; I suppose so." The justice said, "Well, your fine is $15." The plaintiff said, "I am not guilty of anything." He repeated it. Afterward he said: "I am not guilty. How much will it be to get out of this?" The justice said, "$15," but finally the justice reduced the fine to $13. The plaintiff paid it and left, and just as he went out the justice asked him his name. Evidence had also been introduced that there was a regulation of the railway company to the effect that a certain coach on the train on which the plaintiff rode should be used exclusively for negroes and the other cars on that train for whites, and that the conductor and the members of the train crew did not stop over at Vinita, but went on and left the plaintiff there in the hands of the deputy sheriff. One reason why counsel for the plaintiff argue that the complaint, the warrant, and the record of the justice were not admissible in evidence is that the justice had no jurisdiction of the case against the plaintiff because the actual charge against him was a violation of the separate coach law of Oklahoma and he was an interstate passenger; but there was evidence that he had violated a regulation of the railroad company. What the actual charge against him was was an issue on which he had testified, and the record of the justice, the complaint, the warrant, and the testimony of other witnesses who knew were all admissible to contradict his testimony and to disclose all the facts relating to the proceedings before the justice. Counsel also contend that the

complaint and warrant were inadmissible because they failed to state whose peace was disturbed and because they do not tend to prove or disprove any material issue in this case. But the plaintiff had charged and had testified to prove that the railway company was liable for punitive damages because he was arrested by the deputy sheriff, arraigned, and fined by the justice. The question in this case was not whether the complaint before the justice and the warrant issued were legally sufficient to warrant his trial and conviction, although in the absence of objection before judgment they undoubtedly were, but whether or not the railway company unlawfully, maliciously, and without probable cause inflicted the arrest, the detention, the arraignment, and the fine upon the plaintiff, and whether the proceedings before the justice were legal or illegal, valid or void, they and the record of them were competent evidence upon that issue to show what those proceedings were and who conducted them. In an action for both actual and punitive damages for causing the ejection of a passenger from a train, his arrest and his fine by a justice of the peace, the complaint, warrant, and a transcript of the record of the justice are, after the plaintiff has testified to the proceedings before him, admissible evidence to show what the proceedings were and who conducted them and to mitigate the damages or to defeat the claim therefor. Beckwith v. Bean, 98 U. S. 266, 279, 280, 25 L. Ed. 124; Woodall v. McMillan, 38 Ala. 622, 624.

[3] Specifications of error numbered 5, 6, and 9 in the brief of counsel for the plaintiff are leveled at certain statements in the charge of the court; but those statements are not reviewable here because at the close of the charge the court inquired whether or not there were any exceptions, to which counsel for the plaintiff replied, "We have none," and none was taken. An exception before the jury retires to the charge of the court, or to the part of the charge a litigant questions, calls the attention of the trial court sharply to the legal proposition challenged and gives it an opportunity to correct it before injury can ensue. A failure to take such an exception tends to remove any possible doubt from the mind of the court and to confirm the opinion it has expressed and thereby ordinarily estops the litigant from assailing the proposition after a verdict thereon has been rendered. Hence an exception before the jury retires to the charge, or to the portion of the charge a litigant desires to assail, is ordinarily indispensable to its review in a federal appellate court. Lincoln v. Claflin, 74 U. S. (7 Wall.) 132, 139, 19 L. Ed. 106; Southern Pacific Company v. Arnett, 126 Fed. 75, 81, 61 C. C. A. 131, 137; Cass County v. Gibson, 107 Fed. 363, 367, 46 C. C. A. 341.

[4] The eighth specification in the brief is that the jury erred upon the whole record in failing to find a verdict for the plaintiff. But this court is prohibited from reviewing this question by the fact that no request was made to the court to instruct the jury to return a verdict for the plaintiff on the ground that the evidence was so conclusive in his favor that the court would not sustain a contrary verdict, and by the seventh amendment to the Constitution, which prohibits the reexamination by any court of the United States of any facts tried by a

jury in an action at common law where the value in controversy exceeds $20, except by means of the grant of a new trial by the court which tried the issue, or by an award by an appellate court of a new trial for some error of law which intervened in the proceedings. Parsons v. Bedford, 3 Pet. 433, 443, 446, 448, 7 L. Ed. 732.

The specification numbered 11 in the brief for plaintiff in error, which is that the verdict and judgment are violative of the Constitution of the United States, presents no reviewable question here in the state of the record before us for the same reason, that is to say, because the issues of fact which condition the constitutionality of the verdict and judgment are not reviewable by this court and no ruling of the court below on the question of law involving that issue is presented for our consideration by the record.

[5] The tenth specification in the brief is that the verdict of the jury was reached through bias and prejudice against the plaintiff because he was a colored person. But this question was not presented in any other way than by a motion to the court below for a new trial which that court denied. No affidavit of bias or prejudice and no other evidence appears in the record in support of that motion, except the bill of exceptions which contains the evidence upon the trial of the issues made by the pleadings. Under such circumstances a ruling on a motion for a new trial is discretionary with the trial court and is not reviewable in this court in the absence of proof of an abuse of the discretion and there is no such proof in this record.

[6] Finally, it is assigned as error that "the court erred in sustaining the demurrers of both defendants and each of them to the second count of the petition." But, as we have seen, the Pullman Company never demurred to the petition, or to any part of it, and its motion for a directed verdict at the close of the plaintiff's evidence was rightly granted. The court received all the evidence under each count of the petition and under the answers thereto, and then at the close of the trial sustained the railway company's demurrer to the second count of the petition. There are two reasons why the judgment below is not reversible on account of this ruling. First, a federal appellate court is, in an action at law, a court for the correction of the errors of the court below only, and, unless it appears in the record before it that the lower court committed an error of law, it may not reverse its judgment. The legal presumption is that the rulings of the trial court were right, and the burden is on him who asserts that one of them was erroneous to make that fact appear by the record he presents to the appellate court. United States v. Ute Coal & Coke Co., 158 Fed. 20, 22, 85 C. C. A. 302, 304.

The court fails to find in the brief of counsel, as required by Rule 24, § 2, subd. 3 (109 C. C. A. xvi, 188 Fed. xvi), any reference to the pages of the record where the demurrer of the railway company or the ruling upon it, of which they complain, appear, and this court might well follow its established practice that:

"Where counsel for plaintiff in error considers the errors he assigns too trivial to warrant him in finding and citing the pages of the record which present them, the court will not deem them of sufficient importance to require it

to search for them." Hoge v. Magnes, 85 Fed. 355, 358, 29 C. C. A. 564, 567; City of Lincoln v. Sun-Vapor Street-Light Co., 59 Fed. 756, 759, 8 C. C. A. 253, 255; National Bank of Commerce v. First National Bank, 61 Fed. 809, 811, 10 C. C. A. 87, 89; Shoe Co. v. Needles, 67 Fed. 990, 994, 15 C. C. A. 142, 147; Haldane v. United States, 69 Fed. 819, 821, 16 C. C. A. 447, 448.

But that no injustice may result this court has searched the entire record for this demurrer and the ruling upon it, and all it has been able to find is a recital that before the railway company answered it filed a demurrer, which the court overruled, that at the close of the plaintiff's evidence the railway company "filed a demurrer to both counts of the plaintiff's petition ruling on which demurrer was reserved by the court," and that after all the evidence had been received and before the case went to the jury, the court overruled the railway company's demurrer to the first count of the petition and sustained it as to the second count. Neither the demurrer nor any copy of it, so far as we can find, appears in the record in this court. The statutes of Missouri specify seven grounds of demurrer to a petition and require the demurrer to specify distinctly the grounds of objection to the petition. Revised Statutes of Missouri 1909, §§ 1800, 1801. The result is that, as the plaintiff has failed to present the demurrer to this court and to show thereby that it presented no tenable ground of demurrer to the second count of the petition, he has failed to bear the necessary burden of proving that the ruling of the court below here was erroneous and the legal presumption that the demurrer specified some sound objection to the petition must prevail.

Second. If this court should go farther and should presume that the demurrer contained no tenable objection to the second count of the petition, even then the judgment below could not be lawfully reversed. All the admissible evidence on both counts of the petition was introduced at the trial. The first count charged the defendant with the unlawful and malicious ejection of the plaintiff from the train by means of its use of the officers of the law to his injury in the sum of $25,003.81 actual damages and $25,000 punitive damages. The second count charged the defendant with the same ejection by the same means and with arresting and fining him without just cause by use of the officers of the law to his injury in the sum of $25,016.81 actual damages and $25,000 punitive damages. The evidence was conclusive that neither the defendant nor any of its agents caused the arrest, detention, and fine, unless their information to the officers of the law that a negro was riding in the car set apart for whites and their designation to the officers of the law of the plaintiff as the negro who so rode caused it. But the jury found by its verdict on the first count of the petition that the railway company was not liable in damages for the ejection of the plaintiff from the train on account of those acts, and that finding is a demonstration that they could not and would not have found the railway company liable in damages for the arrest, detention, and fine. Thus it clearly appears beyond doubt that, if the court was in error in sustaining the demurrer to the second count of the petition, that error did not prejudice and could not have prejudiced the plaintiff, and error without prejudice is no ground for reversal.

The judgment below must be affirmed. And it is so ordered.

• Since the foregoing opinion was written, the concurring opinion of Judge HOOK has been prepared and presented, in which it is contended that the complaint in McCabe v. Atchison, Topeka & Santa Fé Ry. Co., 186 Fed. 966, 109 C. C. A. 110, gave this court no jurisdiction to determine the constitutionality of the separate coach law of Oklahoma and deprived that decision of authority. To avoid the possible inference that the writer assents to that contention, he adds: First, that since in deciding the case in hand it is unnecessary to consider or determine any question regarding the authority or effect of the decision in McCabe v. Atchison, Topeka & Santa Fé Ry. Co., 186 Fed. 966, 109 C. C. A. 110, and since, as is well said in the concurring opinion, "From the earliest times in this country and in England it has been the rule that observations in an opinion not called for by the issues of the case are not in judgment and are not authoritative," nothing that may be said about it in this case can have any authoritative or judicial effect, and hence its discussion seems futile; and, second, the complaint in that case alleged that the separate coach law of Oklahoma was unconstitutional and that the defendant railway company by virtue thereof was depriving, and threatened to continue to deprive, the complainants and other negroes of their constitutional rights. A demurrer to the complaint had been sustained, and the appeal presented that ruling for review. This court sustained that ruling on the ground that the separate coach law was constitutional, the writer dissenting, and devoted more than nine-tenths of the majority opinion to the discussion of that question. The question whether or not this court had jurisdiction to consider and decide that legal issue was then squarely at issue in that case, and in the opinion of the writer was then authoritatively decided in favor of the jurisdiction. If it had not been so decided, the majority of the court certainly would not have devoted so much of their opinion to the discussion and decision of the constitutionality of that law. Moreover, the decision that the separate coach law was constitutional was solid ground for sustaining the demurrer, and if this court had decided that the coach law was constitutional, as it did, and had then gone farther and decided that even if it was unconstitutional the complainants had not alleged such facts, as it seems to me they did, as entitled them to question it, the decision of the former question would have been, as it seems to me it is now, authoritative and res adjudicata. Where a judgment or decision rests upon two grounds, either of which is sufficient to sustain it, the ruling upon neither ground is obiter, but each ruling is the authoritative decision of the court and is res adjudicata. Union Pacific Railroad Co. v. Mason City & Fort Dodge R. Co., 199 U. S. 160, 165, 166, 26 Sup. Ct. 19, 50 L. Ed. 134; Union Pacific R. Co. v. Mason City & Fort Dodge R. Co., 64 C. C. A. 348, 354, 128 Fed. 230, 236, and cases there cited.

Affirmed.

HOOK, Circuit Judge (specially concurring). The railway company pleaded in defense the separate coach statute of Oklahoma and in brief and argument relied on McCabe v. Railway, 109 C. C. A. 110, 186 Fed. 966. It may not be inappropriate to direct attention to some features of the McCabe case, in the decision of which the writer con-

curred, to the end that it may be made plain that the constitutionality of the statute was not involved in that case and that, had it been, the discussion of the proviso of section 7 (Laws Okl. 1907–08, c. 15, art. 1 [Comp. Laws 1909, § 440]) was unnecessary. The McCabe case was a suit by five negro citizens of Oklahoma to enjoin certain railroad companies in that state from complying with the statute. It was begun before the statute took effect. An amended bill was filed a few days afterwards. The trial court sustained a demurrer to the amended bill, the plaintiffs stood on their pleading and came here by appeal. In their amended bill the plaintiffs disclosed no interest whatever in the prospective effect or operation of the separate coach statute except as they were members of the African race and lived in Oklahoma. It was not claimed that any personal right had as yet been in fact violated. It was not even alleged that the plaintiffs had ever traveled or definitely expected to travel on defendants' railroads. The nearest approach to that was in the averment:

"That the acts and conduct of the defendants and each of them are being done under the provision of the state (statute) of Oklahoma above set out and will be continuous and will work great hardship upon your orators and all persons of the negro race desiring to travel on railroads in the State of Oklahoma."

And in order to show a ground of jurisdiction in equity, which was indispensable to the maintenance of the suit, the averment continued:

"And unless restrained and enjoined by your honors from carrying out the intended injury, a multiplicity of suits will ensue; there being at least 50,000 persons of the negro race in the state of Oklahoma who will be injured and deprived of their civil rights unless so restrained by this honorable court."

This was the only averment to invoke the equitable jurisdiction of the court. The trial court gave no opinion showing the grounds for its action, but it is manifest from long-settled principles of law and procedure that the dismissal of the suit by that court and also the affirmance of its action by this court were imperative for reasons not reaching or touching in any degree the constitutionality of the legislation.

But suppose the above obstacles, which would seem insuperable, had not been in the way, and it became necessary to consider the proviso of section 7 of the Oklahoma statute that:

"Nothing herein contained shall be construed to prevent railway companies in this state from hauling sleeping cars, dining or chair cars attached to their trains to be used exclusively by either white or negro passengers, separately but not jointly."

Clearly there is nothing on the face of this provision that affirmatively commands a violation of anybody's constitutional rights. Violations could only arise from the future conduct of the railroad companies in particular cases, not from the letter of this provision. But even were the letter of the provision ambiguous and fairly susceptible of two constructions, one making the statute valid, the other making it unconstitutional, a court would adopt the former when a specific case arose requiring it to decide the question (United States v. Delaware & Hudson Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836), but it would not indulge in prevision or conjecture. It may be convenient at times to test out beforehand what a law or some part of it means and what may

or may not be done under it; but cases brought for that purpose are moot cases, and courts are not authorized to decide them.

From the earliest times in this country and in England it has been the rule that observations in an opinion not called for by the issues of the case are not in judgment and are not authoritative. It has its foundations in the necessary limitations of the judicial power which deny legislative functions and forbid decision upon cases or conditions not in court, and also in the limitations of the human mind which perceives less distinctly and less accurately those things that lie outside the path of a cause but are regarded as analogies, arguments, or illustrations pointing the way to the end. It is a rule of justice and necessity and is of constant application in the courts and among the judges of a court not only to the opinions of other tribunals and judges but also to their own. As was said years ago in Lucas v. Commissioners, 44 Ind. 525, 541:

"The members of a court often agree in a decision, but differ decidedly as to the reasons or principles by which their minds have been led to a common conclusion. It is therefore the conclusion only, and not the process by which it has been reached, which is the decision of the court, and which has the force of precedent in other cases."

In the trial of the case at bar in the court below the opinion in the McCabe case was relied on as controlling authority. As one of the judges who sat in the McCabe case, I have deemed it my duty to those who may feel bound by expressions in the opinions of this court to state clearly and accurately the real status of that litigation. Having done so, the responsibility in the future must rest with those who continue to regard the views expressed as judicially authoritative or res adjudicata.